(No. 14798.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PETER McCABE, Plaintiff in Error.

*Opinion filed December 19, 1922—Rehearing denied Feb. 8, 1923.*

1. CRIMINAL LAW—*what is sufficient proof of ownership of the property burglarized.* Proof of special ownership or interest in property burglarized is sufficient as against the party charged with breaking and entering the building, and in a prosecution for burglary of a freight car, ownership is sufficiently established by proof that the car was on the right of way and in the possession of the alleged owner and in its use for purposes of transportation.

2. SAME—*when plaintiff in error cannot question sufficiency of evidence.* The plaintiff in error in the Supreme Court is not in a position to question the sufficiency of the evidence where the abstract fails to show that it contains all evidence heard on the trial.

3. SAME—*when the Supreme Court cannot interfere with verdict on consideration of evidence.* The Supreme Court is not warranted in interfering with the verdict of the jury on the ground that the evidence does not support it, unless the court is able to say, from a consideration of all the evidence, that there is a reasonable doubt of the guilt of the accused.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN J. SULLIVAN, Judge, presiding.

W. W. O'BRIEN, and GERARD BARRY, (THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and FLOYD E. BRITTON, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of the crime of burglary and was sentenced to imprisonment in the penitentiary. He prosecutes this writ of error to review that judgment.

About 1:30 A. M., October 2, 1920, a freight train of the Wabash Railway Company, consisting of about sixty cars, pulled into the city of Chicago. In this train was a Soo Line car loaded with merchandise. Edward Cusack, a special officer employed by the railway company, was riding in an empty freight car, guarding the train. When the train stopped near Seventy-fifth and Leavitt streets he observed three men attempting to enter the loaded cars in the train. They broke the seal on the Soo Line car, opened the door, and two of them climbed into the car and began taking merchandise from the cases. One of the men, who was armed with a shotgun, stood guard on the outside of the car. The electric headlight of an engine pulling a Belt Line train through the yards threw a strong light upon this man so that Cusack was able to see him clearly for several minutes. This man he identified as plaintiff in error. The men began to throw merchandise from the car and he then fired at plaintiff in error. Plaintiff in error cried "Ouch!" and dropped the shotgun and ran. The other two men jumped

from the car and escaped. Another special officer testified that he heard the revolver reports about 1:30 A. M.

Edward J. Edgecomb testified that he was a motorman in the employ of the Chicago Surface Lines; that about 2:06 A. M. on the morning of October 2, 1920, he saw the plaintiff in error come staggering toward his car when it stopped at Seventy-fourth street and Racine avenue; that the point at which plaintiff in error boarded his car was about a block north of the Wabash right of way and about a mile west of Leavitt street; that he carried plaintiff in error back to a point where he could reach the Auburn Park Hospital, and that plaintiff in error left the car there.

Patrick McGuire, a police officer, testified that it was reported to him that a man was at the hospital suffering from a gun-shot wound and that he went there to investigate the shooting; that he was admitted to the operating room, where Dr. S. A. Waterman was probing for the bullet; that he did not talk to the patient at that time but returned later; that on his second visit plaintiff in error told him that he had been playing cards from 7:00 in the evening until 1:30 in the morning; that as he approached his home two men jumped out of an automobile in front of his home; that one of them shot him with an automatic revolver; that the other struck him in the jaw and knocked him unconscious; that they robbed him of $20; that when he regained consciousness he walked about six blocks to the street car to go to the hospital, and that he did not go into his house because he did not want to disturb his mother. Three witnesses testified that they played cards with plaintiff in error at a club a few blocks from his home until 1:30 in the morning, and that he left them at the club and went home at that time.

Dr. Waterman testified that he removed a bullet from the left side of the abdomen of plaintiff in error; that the bullet entered above the right hip and passed through the abdomen to a point above the left hip, about an inch higher

than the point where it entered. The bullet taken from the body of plaintiff in error was of the same character and calibre as the bullet fired from the revolver of Cusack.

Plaintiff in error testified on his own behalf that he left his home about 10 o'clock on the evening of October 1 and went to a club near by, where he played cards with some friends until 1:30 in the morning; that he walked home, and when he arrived near the entrance to his home he heard an automobile stop suddenly and turned to see what the trouble was; that two young men jumped out of the car, shot him with an automatic pistol, knocked him unconscious and robbed him of $40; that he did not want to go into the house for the reason that it would scare his mother; that he walked six blocks to a street car, boarded it and rode to a corner near the Auburn Park Hospital, where he met a friend, who took him to the hospital. He denied that he had a conversation with officer McGuire, that he took any part in the burglary in question, that he owned the shotgun found near the freight car, or that he had ever owned a shotgun. It developed during his cross-examination that a police officer lived in the house next door to where plaintiff in error lived, and that the building in which the latter lived was a four-apartment building. He made no complaint to the police officer who lived next door to him, nor to any neighbor, that he had been shot and robbed in front of his home, and he produced no witnesses at the trial who heard a gun report.

The indictment charged that plaintiff in error broke and entered "a certain railroad freight car, the property of the Wabash Railway Company, a corporation." The proof showed that the car in question was marked "Soo Line;" that it was in a Wabash Railway Company train on the right of way and in the possession of said company, and that the merchandise in the car was in the possession of said company for transportation. It is contended that there was no proof that the car burglarized was the property of

the Wabash Railway Company; that the proof showed that the car burglarized was the property of the Soo Line; and that there was a fatal variance between the allegation in the indictment and the proof on the trial, and that the court erred in refusing to instruct the jury to that effect. Special ownership or interest in property burglarized is sufficient to prove ownership as against the party charged with breaking and entering the building. (*People* v. *Fitzgerald,* 297 Ill. 264.) There is no merit in this contention.

It is next contended that the evidence fails to show the guilt of plaintiff in error beyond a reasonable doubt and that the verdict of the jury is contrary to the evidence. The abstract fails to show that it contains all the evidence that was heard on the trial, and for that reason plaintiff in error is not in a position to question the sufficiency of the evidence. (*People* v. *Adams,* 289 Ill. 339.) Notwithstanding this, we have examined all of the evidence and are convinced that the verdict of the jury is right. Plaintiff in error has been positively identified by Cusack as one of three men who committed the burglary, and he was seen by other witnesses a little more than a mile from the scene of the burglary within thirty minutes after it occurred. His account of being shot in a hold-up in front of his home is not convincing, and the jury was warranted in disbelieving his story. The jury saw and heard all the witnesses and was in a much better position to judge the credit to be given their testimony than we are. We are not able to say, from a consideration of all the evidence, that there is clearly a reasonable and well-founded doubt of the guilt of the accused, and so we are not warranted to interfere with the verdict of the jury on the ground that the evidence does not support it. *People* v. *Schoop,* 288 Ill. 44; *People* v. *Byrnes,* 302 id. 407; *People* v. *Martin,* 304 id. 494.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*