People of the State of Illinois, Defendant in Error, v.
Noah D. Rife, Plaintiff in Error.

Gen. No. 9,329.

Heard in this court at
the February term, 1942. Opinion filed May 20,
1942. Rehearing denied October 6, 1942.

1

WALTER V. DYSERT, of Danville, for plaintiff in error; A. B. DENNIS, of Danville, of counsel.

WILLIAM T. HENDERSON, State's Attorney, and THOMAS A. GRAHAM, Assistant State's Attorney, for defendant in error.

MR. PRESIDING JUSTICE HAYES delivered the opinion of the court.

The plaintiff in error, Noah D. Rife (hereinafter called the defendant) with his wife Mabel Rife, was indicted by a grand jury of Vermilion county, charged with the crime of receiving, buying and aiding in concealing 132 pounds of engine brass, and 167 pounds of journal brass, all the property of Benjamin Wham, trustee of the Chicago and Eastern Illinois Railway, a corporation, which brass had been stolen from said trustee. The indictment alleged that the defendant and his wife had knowledge that the brass was stolen property.

The jury returned a verdict finding the defendant guilty, and fixing the value of the property at $9.35, and also found Mabel Rife not guilty. The defendant was sentenced to Vandalia for one year and fined one thousand dollars, from which judgment he prosecutes this writ of error.

On November 5, 1940, the defendant bought the brass in question from Henry Brandon, a colored man, and gave him a check in the sum of $10.67. The defendant and his wife, for sometime prior to the day in question, had operated a junk yard in the city of Danville. At the time in question the Chicago and Eastern Illinois Railway Company had its property and assets in the custody and control of Benjamin Wham as trustee, by appointment of the United States District Court of the Northern District of Illinois, pursuant to a reorganization under section 77 of the Bankruptcy Act. About the middle of October 1940, the round house

foreman in Chicago had supervised the replacing of heavy brass on engines numbered 3643 and 1908, and had the same placed in a freight car, sealed, and sent to Danville, where it was unloaded at the storehouse platform inside the C. & E. I. shops near the round house. It was then put in the bins in the shop at Danville and each piece of brass bore the engine number from which it was removed. On the same day that the defendant had bought the brass from Brandon, three employees of the railway company, together with the deputy sheriff, appeared at the defendant's junk yard where they recovered 299 pounds of railway brass. It bore the engine numbers 3643 and 1908, also a patent number A–D 830 which number is used exclusively by the Chicago and Eastern Illinois Railway. These pieces of brass were introduced in evidence.

The two principal grounds urged for reversal of this judgment are first, the defendant contends that the property in question was not shown to be owned by Benjamin Wham, trustee of the railway, on account of there being an absence of evidence that he filed a fifty thousand dollar bond, and second, that the corpus delicti was not established beyond all reasonable doubt.

It appears from the record that a number of the Peoples' witnesses including W. B. Sloan, chief of police of the Chicago and Eastern Illinois Railway Company; C. Mortel, round house foreman; W. H. Grapethein, storekeeper at Chicago; William C. Sperry, conductor and Louis H. Davidson, checker at the storehouse, all testified that in October and November of 1940, they were working for Benjamin Wham, trustee of the Chicago and Eastern Illinois Railway Company.

From the documentary evidence it appears that Benjamin Wham was appointed trustee of all the property of the Chicago and Eastern Illinois Railway Company by the United States District Court under date of August 1, 1939. It further appears from an order entered on the 9th day of December, 1940, by Judge

BARNES of the United States District Court that Benjamin Wham, trustee was in charge of said railway, and had possession and control of the same from the date of his appointment which was on August 1, 1939.

Special ownership or interest in or possession of property is sufficient to prove ownership as against a party charged with the larceny of such property. *People v. Fitzgerald,* 297 Ill. 264; *People v. Picard,* 284 Ill. 588; *Flanagan v. People,* 214 Ill. 170; *Smith v. People,* 115 Ill. 17.

In the case of *People v. Leggio,* 329 Ill. 514 at page 518 the court said: "The exact state of the title of stolen property is of no particular concern of the thief, except that it must have been in someone else, hence evidence of possession is ordinarily sufficient proof of ownership. Possession, with general acts of ownership, is sufficient to warrant a verdict where there is no evidence presented questioning the right of property. . . . The mere taker of an estray animal is a sufficient owner from whom the animal could be stolen."

In *People v. McCabe,* 306 Ill. 183, the defendant was charged with burglarizing a freight car,—the property of the Wabash Railway Company. The car in question was shown by the evidence to be marked "Soo Line." The proofs further show that the car in question was in a long freight train on the Wabash Railway and in possession of the Wabash as well as the merchandise therein. The point was raised by defendant that there was a fatal variance between the allegations of the indictment and the proof. In passing on this question, the court said: "Special ownership or interest in property burglarized is sufficient to prove ownership as against the party charged with breaking and entering the building. *People v. Fitzgerald,* 279 Ill. 264. There is no merit in this contention."

It appears from the record that there was ample proof to show that the trustee was in possession and

control of the brass engine parts to warrant the jury in finding ownership as alleged in the indictment.

The defendant contends that the corpus delicti has not been established, and points out that the railway officials and agents of the trustee had not missed the parts until they found them in the junk yard, and that Brandon who had brought the parts to the junk yard was not called by the State, although he was present in court. It appears from the record that the prosecution asked the court to make Brandon a court witness which motion was denied and neither party then called Brandon, each being unwilling to vouch for his veracity. Corpus delicti can be proved by circumstantial evidence the same as any other material fact, and the record clearly established that the parts in question had been recently taken from two engines in the railway yards in Chicago, shipped to Danville, and within a short time thereafter were found in this junk yard, with numbers on them that clearly established their identity. These circumstances are similar to those in the case of the *People v. Feeley*, 374 Ill. 402, where police officers arrested the defendant for speeding in his automobile, and then discovered merchandise in the car, which had been stolen from a number of department stores, which included shirts, ties, socks and other wearing apparel. In that case the defendant, as in this case, contended that the corpus delicti was not properly established. The court in passing on this question stated: ''Circumstantial evidence may be resorted to in order to prove the corpus delicti in the same manner and to the same extent that such evidence may be admitted to connect the accused with commission of the offense. . . . The finding of the shoplifter's boxes, the large quantities of similar department store articles stuffed into cardboard boxes, the fact that none of the articles had been wrapped in packages by the stores allegedly making the sales, all satisfactorily proved

the corpus delicti of the offense charged in the indictment without taking into consideration the admissions made by plaintiffs in error.''

There is no invariable rule as to the quantum of proof necessary to establish a corpus delicti. Each case must depend upon its own particular circumstances.

Complaint is made on the given instructions for the people and the refused instructions for the defendant. Nothing has been pointed out of such a serious nature as to cause a reversal. In taking the record as a whole we are not able to say, from a consideration of all the evidence, that there is clearly a reasonable and well-founded doubt of the guilt of the accused and so we are not warranted to interfere with the verdict of the jury on the ground that the evidence does not support it nor that there is a failure to establish the ownership as alleged in the indictment or a failure of proving the corpus delicti.

For the reasons herein stated, we find the judgment of the circuit court of Vermilion county should be affirmed.

*Judgment affirmed.*