(No. 31285.—

BERNICE LASKY, Appellant, *vs.* DAVID SMITH, Appellee.

*Opinion filed September 21, 1950—Rehearing denied Nov. 17, 1950.*

98

COBURN & HERZON, of Chicago, (LOUIS T. HERZON, of counsel,) for appellant.

ABRAM E. ADELMAN, and IRVING ZIMMERMAN, both of Chicago, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal by appellant, Bernice Lasky, plaintiff and counterdefendant in the court below, from a final decree entered by the circuit court of Cook County on June 22, 1949, dismissing for want of equity her complaint for removal of cloud and to quiet title to certain real estate and, adjudging in substance, that the equities are in favor of David Smith, the defendant and counterclaimant below, the appellee herein; and, also from the final order entered by the circuit court on June 8, 1949, overruling and denying all of the exceptions of the appellant to the special commissioner's report upon a reference. A cross appeal was taken by David Smith, the defendant and counterclaimant below from that portion of the final decree adjudging that the real estate involved is free and clear of any dower in cross appellant, and also from the order of the circuit court of Cook County, overruling and denying the one exception of said cross appellant, David Smith, to the special commissioner's report upon said reference.

The record discloses that Bernice Lasky filed her complaint to quiet title to certain property in the city of Chicago, known as 536 North Clark Street. The complaint alleges that plaintiff is the owner of the property in fee simple, as grantee under a quitclaim deed from one Frank Weber, who received title by quitclaim deed dated January 10, 1930, from Mary Smith, who died intestate October 4, 1942. The complaint also alleges that certain trust deeds

and mortgages, which have been fully paid and satisfied, constitute a cloud on plaintiff's title; that defendant, David Smith, claims dower in the property, as the surviving husband of Mary Smith, deceased, which dower has been extinguished by a decree of divorce entered in the city court of Calumet City, Illinois, on January 19, 1940. It is further alleged that David Smith asserts other claims against the property, all of which are invalid. The complaint prays removal of the trust deeds and mortgages from the record and cancellation of the various notes or bonds secured by them, and that the premises be conveyed to plaintiff by the Home Bank and Trust Company, free and clear of any claim of David Smith.

Defendant, David Smith, answered, claiming a one-half interest in the property under a decree of the superior court of Cook County, entered on July 10, 1928, in an action by David Smith against the Home Bank and Trust Company, to cancel a trust of this property and another property, executed by himself and Mary Smith in 1922. The answer further alleges that there appears of record a sheriff's deed against the property, issued on September 4, 1930, to Adolph H. Weseman, under a judgment obtained by him against Mary Smith, in the amount of $1000.

David Smith also filed his amended counterclaim, which alleges that on November 8, 1915, the property was purchased from Thomas Holme for $25,500, of which he and Mary Smith each contributed $6750; that title was taken in Mary Smith's name for the convenience of both parties; that Mary Smith executed a post-purchase money note and mortgage in the amount of $12,000 to secure the balance due, which is now owned by Annie Etkson and constitutes a valid first lien against the property. This contention was disposed of by a decree in the circuit court of Cook County, entered June 19, 1944, which declared that obligation barred by the Statute of Limitations, no appeal being taken from that decree. David Smith further alleges that

on January 7, 1922, to secure a loan from the Home Bank and Trust Company, he and Mary Smith conveyed the property here involved, together with another piece of property located at 517 North La Salle Street, to the Home Bank and Trust Company by trust deed; that the Home Bank and Trust Company, Mary Smith and Mid-City State Bank were named as beneficiaries of the property in trust, all without knowledge of David Smith; that he thereafter filed suit in the superior court of Cook County to cancel all the conveyances, charging fraud and collusion; that a decree of that court entered July 10, 1928, adjudged that Home Bank and Trust Company held title to the properties for the benefit of David and Mary Smith, as their interests shall appear, and ordered reconveyance of both properties to them. Further, that the La Salle Street property was sold and its proceeds used to pay the Home Bank and Trust Company the sums found by the decree to be due it, but that the Home Bank and Trust Company failed to convey as ordered. The counterclaim alleges the death of Mary Smith and claims that title to the Clark Street property here involved is in David Smith as to an undivided one-half and that the remaining one-half is owned by plaintiff, Bernice Lasky, and Raymond Smith, children of himself and Mary Smith, subject to dower in David Smith, as surviving husband of Mary Smith. The counterclaim prays partition and an accounting.

Plaintiff answered the counterclaim denying that David Smith contributed to the purchase price and averred that any contribution, if any made, was a gift, and denied that the decree of July 10, 1928, was a determination of a one-half interest in the property here involved to be in David Smith. The answer further asserts that dower in David Smith was extinguished by a decree of divorce entered against him on January 10, 1940.

Counterclaimant, David Smith, replied, denying the validity of the divorce decree, and the cause was then

referred to a master, who resigned during the proceedings but was appointed special commissioner to complete the hearing.

After the commissioner made his report and objections standing as exceptions were overruled, a decree was entered dismissing the plaintiff's complaint for want of equity and granting partition in accordance with the prayer of the counterclaim. The decree further ordered cancellation and release of the trust deed of January 7, 1922, from David and Mary Smith to the Home Bank and Trust Company and conveyance by that bank or its successor trustee of the property to David Smith, Bernice Lasky and Raymond Smith in the proportions found to be due them by the special commissioner. It further retains jurisdiction to state an account between the parties to determine the amounts of attorneys' fees due counsel for the various parties.

Plaintiff, Bernice Lasky, appeals from that part of the decree dismissing her complaint for want of equity and granting the prayer of the counterclaim. Counterclaimant, David Smith, cross appeals from that part of the decree which finds that Mary Smith obtained a divorce from him on January 19, 1940, and from the failure to find dower in him as to the interest adjudged to be in Bernice Lasky and Raymond Smith.

Plaintiff-appellant, Bernice Lasky, assigns twenty errors which may be reduced, in substance, to three: (1) That the admission of the testimony of David Smith and one Rudolph Frankenstein was error; (2) that the findings and recommendations of the special commissioner are against the manifest weight of the evidence; and, (3) that the claim of David Smith to an interest in the property is barred by *laches*.

Counterclaimant-appellee, David Smith, urges error in the finding below that the decree of divorce obtained by Mary Smith against him on January 19, 1940, was a valid decree so as to extinguish dower.

It would unnecessarily burden this opinion to point out all the details of the facts pertaining to the transactions as disclosed by this record. However, the principal controversy revolves around the testimony of David Smith and Rudolph Frankenstein. It is first contended by plaintiff that their testimony was improperly admitted and that David Smith, as husband of Mary Smith, deceased, was incompetent as a witness against the plaintiff, an heir-at-law of Mary Smith. No specific testimony is pointed out as being improperly admitted, and it is not clear just what the plaintiff's position is on this contention, but apparently she contends that David Smith is barred by section 2 of the Evidence Act. (Ill. Rev. Stat. 1947, chap. 51, par. 2.) Plaintiff's position in all the proceedings below is as grantee of Frank Weber and her claim is to the whole fee of the property. We are of the opinion the Evidence Act does not apply to the parties here because the nature of their respective claims does not bring them within that section of the act. *Simpson v. Wrate,* 337 Ill. 520.

Appellant urges that the evidence below disproves any alleged contribution by appellee to the purchase price of the Clark Street property or any alleged trust agreement between David and Mary that Mary Smith should take the whole title for their joint benefit. The evidence as disclosed by the record to prove such an agreement and contribution consists solely in the testimony of David Smith and Rudolph Frankenstein, who allegedly acted as an attorney for them in the purchase of the property.

David Smith testified that on November 6, 1915, he and Mary Smith, his wife, went to the office of Frankenstein and there disclosed to him their plan to buy the property; that they told him they wished to have title taken in Mary so that she could sign bail bonds independently of David Smith; that Frankenstein drew up a trust agreement providing that the title was to be taken in Mary Smith's name, but that she should hold title for the benefit

of both of them; that thereafter, on November 8, 1915, they purchased the property under such conditions.

Rudolph Frankenstein, who was an attorney in 1915, testified that on November 6, 1915, David and Mary Smith came to his office and revealed to him their plan to purchase the Clark Street property here involved, Mary to take title for their joint benefit, so that she could sign bail bonds independently of David; that he prepared an instrument in writing containing their agreement to that effect and they signed it in his presence and he acknowledged it for them; that he placed the document in his file, where it remained until 1925, since when he has not seen it. In his testimony he recited what he claimed was the verbatim content of the written trust agreement, claiming he could do so because he had "a mental visualization" of the document itself. He testified that after the document was prepared he placed it in his files; that he produced it in 1925 or 1926 in the case of David Smith v. The Home Bank and Trust Company to cancel the trust, and that he had not seen the document since that time; that it was lost. No other evidence, documentary or otherwise, was introduced to support this testimony regarding the execution of the trust agreement.

On the question of contribution, it appears that on the hearing in the case of David Smith v. Home Bank and Trust Company, Mary Smith, in answer to a question regarding the acquisition of the Clark Street property, said, "Well, I had the money, David Smith had money in the bank and we put it together." There is no other evidence regarding any contribution except that made by David Smith and Frankenstein.

Plaintiff's evidence shows that in 1916, in an action to abate a nuisance in the Clark Street property, David Smith in his answer denied any interest in the property. In 1917, in an action to enforce a mechanic's lien against the property, Smith admitted it was owned by Mary Smith.

In the trust deed of January 7, 1922, David and Mary Smith conveyed the Clark Street and La Salle Street property to the Home Bank and Trust Company, in trust. It is conceded, however, that the La Salle Street property was owned jointly by them both, and the litigation and decree entered in that case does not purport to determine that the Clark Street property here involved was jointly owned by David and Mary Smith. A careful examination of the decree entered in that case reveals many circumstances which indicate clearly that David Smith did not assert any right, title or interest in the Clark Street property. The record also discloses considerable dealings as to attorney fees as between Frankenstein and Smith, and in a lawsuit by David Smith on March 6, 1929, against Frankenstein, to compel him to pay over the proceeds of the note and mortgage to him, Frankenstein defended, claiming the application of those proceeds to unpaid attorney fees, which he alleged were earned in part in the litigation by David Smith concerning the Clark Street property. David Smith, in that hearing, disclaimed any interest in the Clark Street property, and the decree entered in that case ordered Frankenstein to pay over the proceeds of the La Salle Street mortgage.

It further appears that for a period of almost thirty years after the date of the alleged trust agreement, the conduct of David Smith with regard to the property contains no instance of any action on his part directly consistent with the claim now made by him, or which is not equally consistent with an interest as husband of Mary Smith, only. On three occasions, in litigations concerning the property, he disclaimed any interest, the last being a litigation against Frankenstein over the proceeds of the La Salle Street mortgage, long after the decree of July 10, 1928, which he now asserts is an adjudication of a one-half interest in him. His contention here is that his interest rests on the express trust contained in the alleged written agreement of No-

vember 6, 1915. There is no finding below that a resulting trust arose and no contention here that the events of November 6, 1915, gave rise to a resulting trust. This, of course, presents the crucial question as to whether there was an express trust created on that date. The evidence to support such a trust consists only in the testimony of David Smith himself and that of Frankenstein. Mary Smith, who allegedly was a party to the trust agreement, is dead. The testimony of Frankenstein contains almost an incredible recitation verbatim of the contents of a purported document which he admittedly had not seen for twenty years.

It is well settled that courts lend an unwilling ear to testimony by interested persons as to what a dead person has said, and such evidence shall be carefully scrutinized as well as considered with all the other evidence in the case. *Keshner* v. *Keshner,* 376 Ill. 354.

David Smith's testimony as to what occurred at the time the alleged trust agreement was executed is not supported by his conduct regarding the property after that date. The only corroboration is found in the testimony of Frankenstein, who has been associated with him in much litigation over the years. It would seem rather doubtful as to authenticity regardless of intense concentration to remember and to state *verbatim* the contents of an instrument executed thirty years before and twenty years after witness says he last saw it. No particular circumstance is pointed to other than the routine business in connection with the execution to impress it indelibly upon his mind. Courts are not required to accept as true testimony which contains such inherent improbability as to impeach itself. (*Schueler* v. *Blomstrand,* 394 Ill. 600; *People* v. *Bentley,* 357 Ill. 82; *Mannen* v. *Norris,* 338 Ill. 322; *Kennard* v. *Curran,* 239 Ill. 122; *Podolski* v. *Stone,* 186 Ill. 540.) Courts may disregard testimony which is discredited by

circumstances as well as by the statements of the witness himself. *Morrison* v. *Beers,* 327 Ill. 139.

Counterclaimant, David Smith, relies on the rule that where the master heard witnesses and his findings are approved by the chancellor, this court will not disturb those findings unless they are manifestly against the weight of the evidence, and he cites the case of *Dombrow* v. *Dombrow,* 401 Ill. 324. There can be no question but that this is a correct proposition of law, but where a cause has been submitted to a master, all the facts are open for consideration, not only by the chancellor, but by the reviewing court. (*Pfaff* v. *Petrie,* 396 Ill. 44.) Where it is sought to establish a trust by parol evidence, the proof must be clear, convincing and so strong, unequivocal and unmistakable as to lead to but one conclusion, and if the evidence is doubtful or capable of reasonable explanation upon any other theory, it is not sufficient. (*Carillo* v. *O'Hara,* 400 Ill. 518; *Cusack* v. *Cusack,* 339 Ill. 108.) We also find that where it is sought to modify the terms of a deed absolute on its face by parol evidence regarding the contents of a contemporaneous written contract which has been lost, the proof in that respect must be clear and convincing. *Miller* v. *Mandel,* 259 Ill. 314.

We find considerable support in the evidence to show, as claimed by appellant Bernice Lasky, that any interest David Smith may claim in the property is barred by *laches.* During the years, appellant has expended considerable money on the property, including its redemption from tax foreclosure, and David Smith made no assertion as to any interest until after the death of his wife. It must be observed her death removed the only possible witness capable of denying the allegations as to the trust agreement of November 6, 1915. In such a situation it seems apparent that David Smith has slept on his rights, if any, and is guilty of *laches. Johnston* v. *Masterson,* 397 Ill. 168.

David Smith, in his counterclaim, urges error in the finding below that his dower interest in the property was extinguished by the divorce decree entered in the city court of Calumet City on January 19, 1940. To support this contention counterclaimant argues that the city court was without jurisdiction to enter the decree because the certificate of evidence in that case, which is in evidence here, does not include any testimony establishing that Mary Smith (Lasky) resided in the county of Cook, State of Illinois, continuously for one year prior to the filing of the complaint. The complaint in that case recites proper averments in that regard and the decree includes a finding of jurisdiction. We held in the case of *Cullen v. Stevens,* 389 Ill. 35, that a city court is a court of general jurisdiction within the limits of the city where it is located; that it has jurisdiction to hear and determine divorce cases; that in case of collateral attack on its decrees all presumptions are in favor of their validity and want of jurisdiction must appear on the face of the record in order to furnish a basis for collateral attack. It was there held that a certificate of the evidence is not a part of the record. This is a collateral attack and the contention as to jurisdiction cannot be sustained.

Cross appellant also argues that the decree is void because the statute requires that, in city courts, jurisdiction of the defendant must rest on his written appearance and in the case in question he was served by publication only. It is argued that prior to 1939, section 5 of the Divorce Act (Ill. Rev. Stat. 1937, chap. 40, par. 6,) provided, in regard to divorce actions, "The proceedings shall be had in the county where the plaintiff resides, but process may be directed to any county in the State;" that in 1939 a proviso was added to this section, "provided, such proceedings may be had in any court of the county, where the plaintiff so resides, that may have jurisdiction to hear and determine divorce proceedings, upon written entry of appearance by the defend-

ant, being filed therein;" that both prior to and after 1939, section 6 of the Divorce Act provided, "The process, practice and proceedings under this act shall be the same as in other civil cases, except as herein otherwise provided." Cross appellant then argues that since circuit and superior courts have always had jurisdiction to grant divorces upon any of the forms of service, without written entry of appearance, the proviso applies to any other court and requires in such other courts that written entry of appearance be filed by the defendant in every case. No authority for any such position appears in any of the cases cited, and we have found none. The language of the cited section does not purport to so limit the jurisdiction of the city courts. We find no merit in this argument. The divorce decree is valid as found below and, as such, it extinguished any right of dower in David Smith. *Seuss* v. *Schukat,* 358 Ill. 27; *Doyle* v. *Doyle,* 268 Ill. 96.

Another question which seems to require consideration is the special commissioner's report, which was approved. It was there found that at the date of the quitclaim deed from Mary Smith to Frank Weber, January 10, 1930, title to the property was in the Home Bank and Trust Company; that Mary Smith had no interest in the property to convey and that the quitclaim deed was therefore ineffective to convey any interest to Frank Weber.

The record discloses that at that time Mary Smith was the beneficial owner of an equitable estate in the property to the extent of her legal ownership prior to the conveyance of the property in trust to the Home Bank and Trust Company on January 7, 1922. There is therefore no foundation for the finding that she had no interest to convey. It has been held that a quitclaim deed is effective to convey an equity of redemption. (*Novak* v. *Kruse,* 288 Ill. 363.) Here, it appears that the obligation secured by the trust deed to the Home Bank and Trust Company had been fully paid before the quitclaim deed was executed to Frank

Weber. The quitclaim deed conveyed all the interest of Mary Smith in the property to Frank Weber, therefore the finding of the special commissioner that Mary Smith had nothing to convey and conveyed nothing to Frank Weber by her quitclaim deed is contrary to the evidence as shown in the record. The quitclaim deed from Frank Weber to Bernice Lasky operated to convey the equitable title held by Mary Smith which she had conveyed to Frank Weber in the quitclaim deed to him.

Considering the whole evidence, it appears that Mary Smith took title to the property here involved in fee simple by warranty deed from Thomas Holme, dated November 8, 1915. Nothing appears in any action of the parties following her acquisition of such title which caused any diminution of her fee-simple ownership until she conveyed the property in trust to the Home Bank and Trust Company in 1922. Since that date legal title had stood of record in the Home Bank and Trust Company with equitable ownership in Mary Smith and her successor. In 1930 Mary Smith conveyed her interest to Frank Weber by quitclaim deed duly recorded. In 1941 Frank Weber conveyed that interest to Bernice Lasky by quitclaim deed which also was duly recorded. The counterclaimant rests his claim on an alleged expressed trust concerning which we have heretofore expressed our opinion.

It is also to be observed in the instant case that the decree taxes no attorney fees as costs, but reserved jurisdiction on that point.

In conformity with our views heretofore expressed in some detail, necessitated by the exigencies of a voluminous record of 1476 pages and briefs containing over 300 pages filed by the parties, we find that the decree below should be affirmed as to its findings that the divorce decree of January 19, 1940, entered in the city court of Calumet City against David Smith (Lasky) is valid and that his dower was extinguished; and the decree below is affirmed in so

far as it requires cancellation and release of the obligations of the trust deed entered into with the Home Bank and Trust Company on January 7, 1922, by David and Mary Smith. The sheriff's deed to Adolph H. Weseman, dated September 4, 1930, affords its own legal status. In all other respects the decree below is reversed and the cause is remanded, with directions to dismiss the counterclaim of David Smith, reinstate the complaint of appellant Bernice Lasky, and enter a decree not inconsistent with the views herein expressed.

*Affirmed in part and reversed in part and remanded, with directions.*