(No. 34995.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RICHARD ZIERLION, Plaintiff in Error.

*Opinion filed March 20, 1959.*

218

Davis, J., dissenting.

George M. Crane, of Chicago, for plaintiff in error.

Latham Castle, Attorney General, of Springfield, and Benjamin S. Adamowski, State's Attorney, of Chicago, (Fred G. Leach, William H. South, and Francis X. Riley, of counsel,) for the People.

Mr. Justice Klingbiel delivered the opinion of the court:

After a trial in the criminal court of Cook County before the judge sitting without a jury, Richard Zierlion was convicted of the crime of burglary. He was sentenced to imprisonment in the penitentiary for a term of not less than one nor more than four years. He brings the case to this court for review by writ of error, contending that the evidence is insufficient to prove him guilty of the crime charged.

The evidence shows that on the night of February 4, 1958, four men, namely Tony Gallas, Tom Hills, Paul Petropulos and Ronald Utterbach, entered the office-warehouse of Martin Oil Service, Inc., in Chicago. They pushed a safe belonging to the company out of a second floor window into the yard of the premises. It proved to be too heavy to move, so the four men left for help. In the meantime they had been observed by an employee of the company who came to work at about 11:45 P.M. The police were notified, arrived at the scene, and waited there until about 2:15 A.M. At that time two automobiles ap-

peared, a Cadillac and a Ford, each containing three men. The Cadillac backed up to the safe with the trunk open, whereupon the police called to the men. The men fled and the police fired shots killing one and wounding the defendant Zierlion. It further appears that after the original four men left to get assistance they met defendant and one Mike Rudis, the deceased, in a tavern; and that the six of them thereafter went to the yard of the Martin Oil Service to get the safe. There is no evidence that the defendant participated in the affair prior to being called upon to aid in moving the safe.

Defendant argues that to warrant a conviction for burglary it must be shown that the accused entered a building with intent to commit a felony, and that since the evidence fails to show such conduct on the part of defendant the present conviction cannot stand. The contention has merit. Evidence that he was guilty of assisting the burglars after the safe had been removed from the building cannot make him a principal in the crime charged. Proof that a person is an accessory after the fact is proof of an independent offense. *People* v. *Cassler,* 332 Ill. 207.

The evidence is insufficient to sustain the judgment, which is accordingly hereby reversed.

*Judgment reversed.*

Mr. JUSTICE DAVIS, dissenting:

I dissent from the conclusions of the court that to warrant a conviction for burglary it must be shown that the accused entered a building with intent to commit a felony, and that evidence that he was assisting the burglars, after the safe had been removed from the building, cannot make him a principal in the crime charged.

Burglary consists of willfully and maliciously entering any dwelling or other building, with or without force, with intent to commit murder, robbery, rape, mayhem, or other felony or larceny. (Ill. Rev. Stat. 1957, chap. 38, par. 84; *People* v. *Hansen,* 5 Ill.2d 535, 540.) An accessory is de-

fined as "he who stands by, and aids, abets or assists, or who not being present, aiding, abetting or assisting, hath advised, encouraged, aided or abetted the perpetration of the crime." One who thus "aids, abets, assists, advises or encourages, shall be considered as principal and punished accordingly." Ill. Rev. Stat. 1957, chap. 38, par. 582.

While the gist of the offense of burglary is the entering with felonious intent, (*People* v. *Iannacco,* 11 Ill.2d 55,) it does not follow that only those who actually enter the building may be convicted and punished as principals. Thus, one who in furtherance of a common design, stands outside as lookout or waits outside in an automobile, while his confederates enter, is equally guilty with them of the crime of burglary. *People* v. *Brendeland,* 10 Ill.2d 469; *People* v. *Arnett,* 408 Ill. 164; *People* v. *Courtney,* 307 Ill. 441; *People* v. *McCabe,* 306 Ill. 183.

The opinion erroneously assumes that the burglary had been completed prior to defendant's participation in efforts to remove the safe from the company premises. While we have held that a burglary is complete upon the breaking and entering with intent to steal, (*People* v. *Iannacco,* 11 Ill.2d 55,) this does not preclude the crime from being a continuing one as long as the participants are still in the process of committing larceny of the property.

The evidence shows that Tony Gallas, Tom Hills, Paul Petropulos and Richard Utterbach entered the building with the intent to commit larceny of the safe: that was the purpose of the burglary. They succeeded in pushing the safe from a doorway on the second floor of the building of Martin Oil Service, Inc., to the ground adjacent to the building. However, they were unable to remove it because of its weight, and proceeded to a tavern at 127th and Kedzie, where Tony called someone for help to get the safe in the car of Paul Petropulos. In about a half hour Mike Rudis came in and talked with Tony. The defendant remained outside in Rudis's car, a Ford, and the statement of

Paul Petropulos recites that, "We all agreed to go back and get the safe." That the burglars' midnight departure was not an abandonment of their original purpose to steal the safe is evidenced by their return to the scene of the crime, accompanied by the defendant and Rudis.

The defendant testified that he was drinking with Rudis when Rudis received a telephone call after which he said, "Let's take a ride, I want to help somebody move something." It was then about 1:30 A.M. He denied meeting anyone and knowing that the object to be moved was a safe. On cross-examination he stated that, "We parked one half block away from Martin Oil Company," and that "I saw this safe outside but I didn't do anything."

Paul Petropulos testified that after Rudis talked to Tony, they asked him to take his Cadillac to 131st and Kedzie, the address of the Martin Oil Service, Inc.; and that en route a Ford was in front of him. His statement indicates that Rudis, Tony and the defendant rode together from the tavern to where they parked the Ford adjacent to the Martin Oil Service, Inc., premises and that they "walked across the parking lot and were met by Tom at the safe."

Police officer O'Lena testified that about 2:15 A.M. he saw a Ford approach the office building and park about one half block away; that three men got out and walked through a field to the office building; that a Cadillac then pulled off 131st Street with its lights off, one of its occupants got out, and this party, as well as Rudis, motioned for it to proceed; that the Cadillac stopped in front of the driveway to the property and backed up to the safe with the trunk open; and that the defendant, Rudis and Utterbach started lifting the safe into the car when the witness stepped out, commanded them to stop and announced that he was a police officer. It was then that all of the participants in the crime started to flee, Rudis was killed, and the defendant shot in the leg.

Defendant's denial of knowledge that the object to be

moved was a safe is unpersuasive. The record shows that he was convicted of burglary in 1945, and I assume that he was not unfamiliar with burglarious procedures. He rode with Tony and Rudis to within one half block of the Martin Oil Service, Inc., premises where the burglars left the safe beside the building which they had entered. He and his companions, at approximately 2:15 A.M., then walked across a field to get to the building and the safe. He saw Rudis motion to the Cadillac to back in and saw that the car lights were off and the trunk open. And while he denies participating in lifting the safe into the car, officer O'Lena testified that the defendant, Rudis, and Utterbach had started lifting the safe into the car when he commanded them to "hold it." Defendant's lack of curiosity concerning the nature of assistance which he was giving, at 2:15 A.M., to persons he allegedly had never met, on the property of Martin Oil Service, Inc., in connection with the removal of a safe, does not inspire belief that he was an innocent bystander who merely went along for the ride.

Neither the trial court nor this court is required to give credence to the testimony of a witness if it is contrary to the general knowledge and experience of mankind. (*People v. Malmenato*, 14 Ill.2d 52, 59; *Lasky v. Smith*, 407 Ill. 97, 106 and 107; *Schueler v. Blomstrand*, 394 Ill. 600, 617; *People v. Bentley*, 357 Ill. 82, 103.) Such was the testimony of the defendant who was apprehended while fleeing from the scene of the crime after the officers had prevented loading operations.

It is a general rule of law that "one who withdraws from a criminal enterprise is not responsible for the act of another subsequently committed in furtherance of the enterprise, provided the fact of withdrawal is communicated to the other conspirators." (14 Am. Jur. Criminal Law, sec. 80; see also 22 C.J.S., Criminal Law, sec. 94.) Conversely, one who joins and participates in completing a criminal

enterprise should be responsible for both the prior and subsequent acts committed in furtherance of such venture.

The evidence establishes that the entry of the building had been accomplished, but the intent to steal the safe had been thwarted at the time the defendant joined the burglars and aided, abetted and participated in furtherance of the original intent to commit larceny of the safe, the purpose of the burglary. Consequently, he is liable as principal even though he did not enter the building. I would affirm the criminal court of Cook County.