THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD T. JOINTER, Defendant-Appellant.

First District (5th Division)   Nos. 1—87—2084, 1—87—2283 cons.

Opinion filed March 3, 1989.

Jonathan Minkus, of Jonathan Minkus & Associates, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Andrea K. Muchin, Douglas J. Bank, and Andrew LeFevour, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—1) of a Conrail Corporation (Conrail) railroad freight car and was sentenced to four years' imprisonment. On appeal, defendant raises the following points in favor of reversal: evidence produced at trial was insufficient to prove beyond a reasonable doubt that defendant was accountable for the burglary of the railroad car; the trial court improperly denied defendant the right to elicit testimony regarding motive for his arrest; the trial court improperly relied on defendant's past criminal record in determining guilt; and defendant's right to a fair trial was denied because the court "acted as an advocate for the State."

For reasons which follow, we affirm. We summarize below evidence pertinent to our disposition.

Prior to presentation of witnesses, the parties stipulated that, if Donald Corp, a Conrail security officer, was called to testify, he would state that he did not give defendant permission to either enter any Conrail railroad car on October 11, 1986, or possess any of the boxes

of merchandise inside any railroad car under the custody or control of Conrail on that date. Corp would further testify that, after being notified by police, he went to the Chicago police station at 22nd and Damen Streets and identified, for Officer Linda Kennedy and another officer, 13 boxes and their contents as coming from a Conrail railroad car.

The record indicates that when the assistant State's Attorney began to enumerate specific contents, the trial judge interjected that Corp would testify with regard to "the document listed in the [State's] answer to discovery." Defendant's counsel so stipulated.

We note here that the State's "Answer to Discovery" refers specifically to documents regarding evidence inventoried by the Chicago police department in conjunction with the charge against defendant. The inventory receipt related to defendant's arrest recited, as recovered items, "1 case of Isotoner gloves, 2 cases [of] Aris gloves and socks, 2 cases [of] Orrefors crystal, 2 cases [of] Lancome purses, 4 cases [of] Lancome nylon briefs, and 1 case [of] Parisian table clothes."

Chicago police officer Linda Kennedy, the State's only witness, testified that, at approximately 1:41 p.m. on October 11, 1986, while she was on routine patrol in a squad car, she was notified by radio of a burglary in progress at Cermak Road and Christiana Street, approximately one block away from her then present location. Kennedy testified that, as she proceeded southbound on Christiana Street toward the railroad cars, she observed several people on the railroad tracks located on an embankment above street level. There were two individuals in an opened railroad car and as many as six individuals nearby. While still in the squad car, she observed an individual she identified as defendant reach into a railroad car and receive, from someone inside, a cardboard box. The record indicates she demonstrated for the court the manner in which defendant reached inside the railroad car to receive the cardboard box. She testified that her view of defendant was unobstructed and that she observed defendant from approximately 30 feet away. Kennedy testified that after receiving the cardboard box, defendant turned and came down the embankment. When he came through a hole in the fence at the bottom of the embankment, she placed him under arrest. Another officer aided Kennedy.

Kennedy further testified that she observed several cardboard boxes strewn about the tracks. Approximately 13 boxes were recovered and were taken to the police station. The box taken from defendant was put into the back of her squad car and was also taken to the police station. Kennedy stated she was present when Corp later iden-

tified the boxes.

The following exchange took place regarding the cardboard box defendant had in his possession when arrested:

"Q. [Assistant State's Attorney]: The box that you had recovered from [defendant], was that box open?

A. [Kennedy]: Yes, sir.

Q. [Assistant State's Attorney]: What if anything was found inside that box?

[Defendant's Counsel]: We will stipulate to what was found.

THE COURT: The same stipulation that those items—

[Assistant State's Attorney]: Were taken from the Conrail boxcar as stipulated to by the Conrail officer as belonging to that particular boxcar.

[Defendant's Counsel]: Yes, judge."

On cross-examination, Kennedy admitted that, as she proceeded to the scene, she focused her attention on individuals running from the railroad car. She also stated that she was accelerating in order to quickly arrive at the scene. She admitted that she did not question defendant after placing him under arrest nor did she recall what defendant was wearing at the time of arrest. Kennedy stated, however, that defendant was "very dirty" and did not appear to be on his way to work. No other individuals were arrested because they escaped.

On redirect examination, Kennedy testified that she never lost sight of defendant from the time he left the location of the railroad car to the time he went to the hole in the fence.

Jackie Berry, the manager of a Kentucky Fried Chicken restaurant where defendant was employed, testified for the defense. Berry testified that on October 11, 1986, defendant was scheduled to begin work at 3 p.m. but was telephoned to come in earlier, at 1 p.m. Defendant did not show up for work.

Defendant testified on his own behalf. Defendant testified that in 1975 and in 1978 or 1979 he was convicted of burglaries, serving prison sentences for the convictions. In connection with the second conviction, defendant also worked on work release and was paroled. He had no problems and was released for parole early. Soon after being released from prison, he found employment. In 1985 he began working at the Kentucky Fried Chicken restaurant.

Defendant stated that, on the day in question, from approximately 12 to 12:15 p.m., he was sitting on the porch at his girlfriend's house at 2126 South Christiana Street, three houses north of the railroad tracks. Defendant stated that while he was sitting on the porch, he

observed individuals on Christiana Street with boxes. That activity continued for about 20 minutes before the police arrived. He stated he left his girlfriend's house at 12:20 p.m. and began walking down Christiana Street on his way to work a few blocks away. His girlfriend's daughter was with him. He was wearing a Kentucky Fried Chicken uniform. He observed approximately 15 "kids running around breaking into freights." Defendant stated that such a scene was common. He did not stop walking. Defendant testified the police arrived and he was arrested. The time was approximately 12:45 p.m.

On cross-examination, defendant admitted that in 1978 he was involved in not one, but two burglaries.

The 10-year-old daughter of defendant's girlfriend also testified. She testified that she was on the porch with defendant on October 11, 1985, and accompanied defendant when he left to walk to work. She saw "some boys running down at the corner with boxes." She saw the defendant get stopped by the police right by the railroad tracks. She stated that she did not see defendant on the railroad tracks.

On cross-examination, she stated that Officer Kennedy did not have to walk any distance down the railroad tracks to get to the railroad car; it was directly up the embankment from the location of the hole in the fence. She stated that defendant had seen the activity around the railroad car while they were sitting on the porch. However, she testified she never saw defendant leave the porch and go over to the railroad car to get a box.

OPINION

We consider, first, whether evidence adduced at trial was sufficient to prove defendant guilty of burglary beyond a reasonable doubt. We address, in turn, each of the arguments raised by defendant in support of that contention.

Defendant argues that stipulations entered between the parties were ambiguous and did not establish that the cardboard box defendant had when arrested belonged to Conrail or that it was taken from the railroad car burglarized.

■ We are not persuaded by defendant's argument. First, defendant's arrest report refers directly to the document number of the inventory receipt filled out at the time of defendant's arrest. That corresponding receipt lists the specific items of merchandise recovered in connection with defendant's arrest; the same items the assistant State's Attorney began to enumerate in explaining the scope of Corp's stipulated testimony before the trial judge interjected reference to the State's "Answer to Discovery." Second, it is not disputed

that defendant's counsel stipulated that Corp's testimony would include testimony pertaining to "the document listed in [the State's] Answer to Discovery." The State's "Answer to Discovery" specifically refers to items inventoried in the course of defendant's arrest. Thus, contrary to defendant's assertions that the stipulations do not establish a connection between the items recovered and those in defendant's possession, the stipulations, when considered together, clearly indicated that the items recovered in conjunction with defendant's arrest were in the control or custody of Conrail.

Further, in focusing entirely on the stipulations and ignoring the testimony of Kennedy, defendant's argument fails to consider that the elements of an offense can be proven by inference from the evidence. (*People v. Flowers* (1977), 52 Ill. App. 3d 301, 367 N.E.2d 453.) Here, sufficient evidence exists in the record otherwise justifying an undeniable inference that the cardboard box defendant had when arrested belonged to Conrail and that defendant received that property during the commission of a burglary. Kennedy testified that she observed defendant receive, from someone inside the railroad car, the cardboard box defendant had in his hands when she arrested him. Kennedy further testified that that particular box, like the others, was taken to the police station where the boxes were identified by Corp as the property of Conrail.

Defendant next contends that the State failed to prove defendant shared the intent of the burglars or that defendant's actions were in common with those of the burglars such as to support defendant's conviction on the basis of accountability. Defendant relies primarily on *People v. Zierlion* (1959), 16 Ill. 2d 217, 157 N.E.2d 72.

In *Zierlion*, four men entered an office of Martin Oil Service, Incorporated, and pushed a company safe out of a window. When it proved too heavy to move, the four men left to get assistance. Defendant was arrested when he returned with the four men in an automobile to retrieve the safe. The supreme court reversed defendant's subsequent conviction for burglary because the court determined there was no proof that defendant participated in any way in the original entry. By merely assisting the principals in moving the safe, the court reasoned, defendant became an accessory after the fact, an independent offense, but could not be found guilty of burglary based on accountability. *Zierlion*, 16 Ill. 2d at 218, 157 N.E.2d at 73.

■■ ■ *Zierlion* cannot control the disposition of the instant appeal. Unlike the circumstances of *Zierlion*, the record here contains testimony placing defendant at the scene and actively participating in a burglary in progress. Evidence further exists showing that defend-

ant possessed merchandise from that burglary. The fact that there was no direct evidence to show that defendant participated in the actual break-in of the railroad car or formed the intention to rob the railroad car until after it had been broken into is irrelevant to the issue of whether defendant is legally accountable for the burglary. Under section 19—1 of the Criminal Code of 1961, unauthorized entry into a railroad car with intent to commit theft constitutes burglary. (Ill. Rev. Stat. 1985, ch. 38, par. 19—1.) The essential elements of that offense, entry with the requisite intent, are satisfied through legal accountability when an individual simply aids or abets another in the commission of the offense. (Ill. Rev. Stat. 1985, ch. 38, pars. 5—1, 5—2.) In determining whether an individual aided or abetted a crime, the trier of fact may consider evidence that the individual was present at the scene and lent his approval. *People v. Washington* (1978), 63 Ill. App. 3d 1037, 380 N.E.2d 1010.

In the instant case, Kennedy's testimony did not merely place defendant at the scene of a burglary in progress. Her testimony established specifically that defendant reached into the open railroad car and received, from someone inside, a cardboard box. Kennedy testified that defendant carried the box away from the railroad car down the embankment. That testimony alone is sufficient to support defendant's conviction on the basis of legal accountability.

Defendant also contends that Kennedy's testimony was not credible and was not sufficient to form the basis of a guilty verdict.

It is well settled that the testimony of a single witness is sufficient to convict if that testimony is positive and the witness credible, even though the testimony is contradicted by the accused. (*People v. Glover* (1971), 49 Ill. 2d 78, 273 N.E.2d 367.) Further, issues respecting credibility of witnesses are properly relegated to the finder of fact, in this case the trial judge, not a reviewing court, because, as the supreme court has recently observed:

> "[The trier of fact] can observe [witnesses'] personalities, their abilities to perceive, their levels of cognition, their attitudes, nonverbal communications such as body English, their levels of recall, and their abilities to communicate verbally. The reviewing court must glean these facts from the 'cold record.' " *People v. Hendricks* (Ill. S. Ct. No. 63803, November 1988), citing Hartman, *Judges May Differ: Another Look at Judicial Decision Making*, 76 Ill. B.J. 540, 541 (1988).

We find no merit in defendant's contentions that the testimony of Kennedy did not provide a sufficient basis to convict defendant. As stated above, Kennedy's testimony positively established defendant's

activities with respect to the open railroad car. We are satisfied that the trial judge, having had firsthand opportunity to hear and observe Kennedy testify, determined that testimony credible enough to support a conviction. We find no basis to conclude otherwise.

■ Defendant also contends that the trial judge improperly considered defendant's past criminal record in determining defendant's guilt. In arguing that point, defendant's opening brief draws the court's attention to the following comment:

> "I [the trial judge] see someone with a prior criminal record deciding that he *** is [sic] going to get something free *** entered on the premises and [was] handed the boxes [sic] down from the car and proceeded to walk away with it when he was arrested."

Our review of the record, however, reveals that the quoted passage is from the transcript of the hearing held June 19, 1987, in which the trial judge ruled on defendant's post-trial motions and conducted a presentence investigation. The above comment was made immediately prior to imposition of defendant's sentence. When defendant was found guilty at the trial's conclusion on May 15, 1987, no such reliance on defendant's prior criminal record was made.

■ Finally, we decline to consider the defendant's contentions that he was denied a fair trial because the trial judge acted as an "advocate for the State" and that he was prejudiced by the court's refusal to permit cross-examination of Kennedy regarding motive for defendant's arrest as we conclude defendant waived the opportunity to raise either issue on appeal. Although defendant filed a motion for a new trial following his conviction for burglary, that motion fails to state with specificity the reasons now urged as having denied defendant the right to a fair trial or as having caused prejudicial error. As we have observed, conclusory allegations contained in written post-trial motions are insufficient to preserve specific issues for consideration on review absent application of the limited "plain error" exception. (*People v. Thomas* (1984), 121 Ill. App. 3d 883, 460 N.E.2d 402.) After carefully reviewing the record, we are not convinced that the evidence was so closely balanced or the errors so prejudicial as to invoke that exception. We therefore affirm the judgment of the circuit court.

Affirmed.

MURRAY, P.J., and PINCHAM, J., concur.