THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES C. BROWN *et al.*, Defendants-Appellants.

First District (4th Division)    No. 77-593

Opinion filed March 29, 1979.

Ralph Ruebner and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Stephen Ferrone, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, the defendant, Carl Tillman, was found guilty of the armed robbery of Cathleen Elam and Louis Crenshaw, the attempted murder of Crenshaw, and the murders of Sidney Holland and Felicia and Luella Edwards. In a concurrent trial without a jury, the trial judge found a similarly charged co-defendant, James C. Brown, guilty of involuntary manslaughter in the deaths of Holland and the Edwardses, but acquitted him of armed robbery and attempted murder. Brown is not a party to this appeal.

The trial court sentenced Tillman to two, four to twelve year terms of imprisonment for the armed robbery and attempted murder convictions and terms of 15 to 45 years imprisonment for each murder conviction, all sentences to be served concurrently. On appeal, Tillman contends that the evidence was insufficient to convict him of the murders; that the indictment under which he was charged was invalid; and, that a jury instruction involving the attempted murder charge was in error.

Crenshaw and Elam testified that they were robbed by two men, one of whom carried a gun, in the stairway of Elam's apartment building in Chicago. The witnesses identified Tillman as the gunman at a police lineup and in court.

During the robbery, after Elam gave the robbers the coat she was

carrying, the gunman, standing on the stairs below her, ordered her to approach him; she complied. He took the rabbit jacket she was wearing and her black purse. Crenshaw and the accomplice began to scuffle on the stairs above them. Crenshaw testified that he heard a gun go off during the struggle. Elam testified that, facing the gunman, she watched him as he "moved the gun out of my face and shot." A bullet struck a banister one foot away from Crenshaw.

After the shot, the robbers fled down the stairs; both victims chased after them. Elam followed the men out of the apartment building. Crenshaw, however, returned to the stairway to retrieve his glasses lost in the struggle. On the stairs he found one of the coats taken from Elam and a blue platform shoe he believed belonged to one of the robbers.

On the street Elam saw the gunman run west and his accomplice run east. She watched the gunman, holding her jacket and purse, enter the passenger side of a parked, dark Pontiac. She flagged down a passing police patrol car, got into it and told the officers inside that she had been robbed and that the culprits were in the Pontiac just a few car lengths ahead of them.

Several police officers corroborated the testimony of the robbery victims. The driver of the police car flagged down by Elam said that after her identification, he turned on the siren of the police car and followed the Pontiac, attempting to stop it, but that the Pontiac sped up, traveling in excess of 100 miles per hour. The officer stated that after chasing it several blocks, he saw the Pontiac, without any hesitation, speed through a stop sign at 59th and Ada Streets, ram into a Cadillac passing through the intersection and slam up against a wall on the northwest corner of the intersection.

A patrolman looked into the Cadillac and found the driver, Holland, and two passengers, Luella and Felicia Edwards, dead; a fourth passenger survived the crash. The officer returned to help his partner who was trying to open the Pontiac car door with a crowbar. When they succeeded in prying loose the passenger side door, Tillman got out and began to struggle with one of the officers; the driver of the Pontiac, Brown, also started to fight with the police. Both were arrested but only after additional policemen arrived at the scene and subdued them.

Inside the Pontiac, the police found a rabbit jacket, a black purse and a blue platform shoe. The jacket and purse were identified by Elam as those taken from her by the gunman. The shoe matched the one found by Crenshaw at the scene of the robbery.

Tillman contends that the evidence was insufficient to convict him of the murders of Holland and the Edwardses. His convictions are based on the felony-murder rule, which states:

"(a) A person who kills an individual without lawful justification

commits murder if, in performing the acts which cause the death:

\* \* \*

(3) He is attempting or committing a forcible felony other than voluntary manslaughter." (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)(3).)

Tillman points out that his co-defendant Brown, as driver of the Pontiac, was the person who actually performed the act which killed the occupants of the Cadillac and that Brown was acquitted of armed robbery and murder. According to Tillman, in order to hold him responsible for Brown's conduct, the "accountability" statute, section 5—2 of the Illinois Criminal Code, must be applied:

"A person is legally accountable for the conduct of another when:

\* \* \*

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such person in the planning or commission of the offense." Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c).

Under Tillman's reading of the section, his culpability for Brown's acts depended upon the presentation of evidence showing a common plan or design to commit armed robbery between Brown and him. Tillman asserts Brown's acquittal absolutely negates this associative element. Since Brown was not part of the armed robbery scheme, Brown's conduct has to be viewed as independent of the robbery and independent of Tillman. Tillman states this means that the car crash deaths resulted from an unforeseeable, intervening event—Brown's reckless driving—not the armed robbery. He contends that he cannot be convicted for acts he did not commit or have legal responsibility for.

Tillman's theory rests on an "agency" interpretation of the felony-murder rule. Under such a construction, criminal liability is imposed on a felon for the acts of another only when the conduct causing death is done by a confederate in furtherance of the felony. See "Criminal Law—*People v. Hickman*—Defining the Felon's Accountability Under the Felony Murder Rule" (1976), 7 Loy. Chi. L. J. 529 (1976); Morris, *The Felon's Responsibility for the Lethal Acts of Others*, 105 U. of Pa. L. Rev. 50 (1957).

■■ ■ Illinois has adopted an interpretation of the felony-murder rule which expands a felon's liability for deaths occurring during and as a result of a felony beyond the agency concept. In Illinois, felons are held culpable for the acts of another which cause the deaths of innocent parties when the deaths are "proximately caused" by the commission of the felony. In other words, a felon is responsible for those deaths which occur

during a felony and which are the foreseeable consequence of his initial criminal acts.

■■ This construction of the felony-murder rule was articulated in *People v. Hickman* (1974), 59 Ill. 2d 89, 319 N.E.2d 511. In that case, robbers were convicted of felony-murder under section 9(a)(3) of the Illinois Criminal Code for the death of a policeman who was mistakenly shot by another officer. The shooting occurred during a gun battle in which the police were attempting to halt the escape of the robbers from the scene of the robbery. In applying the felony-murder statute, the court did not use the accountability principles of section 5—2. There obviously was no showing of combination between the robbers and the officer who actually fired the shot to engage in a common criminal design or plan. Under *Hickman* the elements necessary to convict a felon for felony-murder are (1) evidence that shows the defendant was a participant in a forcible felony and (2) evidence that shows that an innocent party was killed during the commission of the felony as a direct and foreseeable consequence of it. *Hickman*, 59 Ill. 2d 89, 93-94, 319 N.E.2d 511, 513.

Tillman has not appealed his armed robbery conviction and evidence in the case clearly shows that Tillman was a participant in the forcible felony of the armed robbery of Elam and Crenshaw. Tillman was identified as the gunman in the robbery by both victims at a lineup and in court. Elam's testimony traced his movements from the apartment building where the robbery occurred to the Pontiac and then to the car crash where he was arrested. Tillman was found with items taken in the robbery and a shoe which matched one lost by a robber at the scene of the crime.

The question then becomes whether there was proof, beyond a reasonable doubt, that the deaths of Holland and Felicia and Luella Edwards in the car crash were the direct and foreseeable consequence of Tillman's commission of the armed robbery.

We find that while there may not have been enough evidence to hold Brown, the driver of the Pontiac, culpable for Tillman's conduct in committing the armed robbery, there was sufficient evidence to support the inference that Brown's speeding and reckless driving which caused the deaths were part of Tillman's escape attempt.

■■■ Logically or legally consistent verdicts between co-defendants are not required unless both verdicts had to be based on the same evidence. (See *People v. Jayne* (1977), 52 Ill. App. 3d 990, 368 N.E.2d 422; *People v. Brown* (1977), 47 Ill. App. 3d 920, 365 N.E.2d 514.) In this case, the evidence against Brown varied considerably from that presented against Tillman. Tillman's armed robbery guilty verdict was, in part, based on the eyewitness' identification of him as the gunman. Brown, on the

contrary, was never identified as one of the actual robbers; and in fact, testimony shows that the second robber escaped in a direction opposite to the Pontiac which Brown drove. Further, there was no direct proof that Brown even knew Tillman had committed an armed robbery. Brown's acquittal, therefore, does not raise a reasonable doubt as to Tillman's guilt in the armed robbery or Tillman's intention to escape from the scene of it.

■■ But, an examination of the evidence shows that a rational interpretation of Tillman's actions after he left the apartment building is that he was engaged in an escape from the robbery. From police testimony about the use of the siren, the immediacy of the police chase and the speed of the Pontiac, the jury could infer that Tillman was aware of the police pursuit and that the efforts to stop him were directly connected with the armed robbery. From Tillman's actions in trying to evade arrest after the crash, the jury could conclude that, still intent on flight, he was a willing participant in the getaway from the time he left the apartment building. An attempted escape immediately after the commission of a crime is a part of the crime itself. (*Hickman*, 59 Ill. 2d 89, 94, 319 N.E.2d 511, 513.) It was the armed robbery coupled with the pursuit by the police which set in motion the speeding escape. Based on that, we cannot say the jury was wrong in its determination that the fatal crash was the direct and foreseeable consequence of Tillman's actions. In committing the robbery and attempting the escape, Tillman performed the acts which caused the deaths of Holland and Felicia and Luella Edwards. We believe, therefore, the evidence was sufficient to prove him guilty beyond a reasonable doubt of their murders under the felony-murder rule as codified in section 9(a)(3) of the Criminal Code.

The indictment which charged Tillman was signed by "acting" grand jury foreman, James A. Mink. Tillman argues that the signature on an indictment of someone asserting to be the "acting" foreman instead of the actual foreman of the grand jury defeats the indictment. In support of his position he cites *People v. Brautigan* (1923), 310 Ill. 472, 142 N.E. 208. In *Brautigan* there were two sitting grand juries issuing indictments, but only one was officially authorized to do so. The court held that while a properly constituted grand jury exercises its functions, an unsanctioned grand jury has no authority to act.

■■ The validity of a grand jury indictment is not controlled by technical formulas. (See *People v. Stevenson* (1969), 107 Ill. App. 2d 441, 246 N.E.2d 309.) While it is the responsibility of the foreman of the grand jury to sign each bill of indictment (Ill. Rev. Stat. 1975, ch. 38, par. 112—4(d)), as noted in *People ex rel. Merrill v. Hazard* (1935), 361 Ill. 60, 63, 196 N.E. 827, 829, that responsibility is merely "a matter of direction to the clerk

and for the information of the court; \* \* \* its presence or absence does not materially affect any substantial right of the defendant \* \* \* it neither assures to him nor prevents him from having a fair trial."

■■ Indictments signed by someone other than the grand jury foreman are only technically defective. (See, *e.g.*, *People v. Wilson* (1972), 7 Ill. App. 3d 158, 287 N.E.2d 211.) Unlike *Brautigan*, there is no evidence whatsoever that the "acting" foreman in this case usurped the function of or acted in opposition to an authorized grand jury foreman. Without proof of such conflict, or proof that the signature of the "acting" foreman, rather than the actual foreman, materially prejudiced Tillman's right to a fair trial, the fact that the "acting" foreman signed the indictment does not operate to invalidate it.

Finally, Tillman complains that part of the jury instruction for the attempted murder charge was in error. The instruction defined murder as the intent to "kill or do great bodily harm" or knowledge that acts "create a strong probability of death or great bodily harm." This permitted the jury to find Tillman guilty of the attempted murder of Crenshaw even if it found he acted with less than an intent to cause Crenshaw's death. *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28, held such an instruction defective.

■■ Tillman objected at trial to the instruction (although for reasons other than those articulated in *Harris*) and he presented an overall objection to the instruction in a post-trial motion. Further, the evidence at trial concerning the attempted murder charge adduced an ambiguous situation. While the testimony clearly was that Tillman fired a gun near Crenshaw, nothing showed that Tillman directed the shot at any particular person or persons. In *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, it was held that when an objection to such an instruction is made at trial and preserved in a post-trial motion and when the evidence used to convict the defendant of attempted murder is ambiguous, the conviction must be reversed. In light of the holdings in *Roberts* and *Harris*, we reverse Tillman's conviction for the attempted murder of Crenshaw and remand the case for a new trial.

The judgment of the circuit court of Cook County is affirmed in part, reversed in part, and this cause is remanded for disposition consistent with this opinion.

Affirmed in part.

Reversed in part and remanded.

LINN and ROMITI, JJ., concur.