THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LARRY HOUSE, Defendant-Appellant.

Second District   No. 2—90—1194

Opinion filed July 29, 1992.

G. Joseph Weller and Anne S. Quincy, both of State Appellate Defender's Office, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Larry House, was convicted, following a bench trial, of the offense of burglary (Ill. Rev. Stat. 1991, ch. 38, par. 19—1(a)) and was sentenced to a four-year term of imprisonment. Defendant challenges the sufficiency of the evidence to support his conviction and the trial court's refusal to find him eligible for the Treatment Alternatives to Street Crime (TASC) program.

First, defendant contends that the evidence was insufficient to prove his guilt beyond a reasonable doubt on an accountability theory. When a defendant challenges the sufficiency of the evidence to support his conviction, the reviewing court will consider all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Frieberg* (1992), 147 Ill. 2d 326, 360.) This standard applies in all criminal cases, including those where the evidence is circumstantial. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291.) The reviewing court will not reverse a conviction unless the evidence is so improbable as to justify a reasonable doubt of the defendant's guilt. (*People v. Eyler* (1989), 133 Ill. 2d 173, 191.) We will not substitute our judgment for that of the trial court on questions of the weight of the evidence or the credibility of the witnesses. *People v. Young* (1989), 128 Ill. 2d 1, 51.

The undisputed facts are that defendant was walking to the Eagle grocery store in Aurora when his friend Leo Beamon drove up. Defendant got into Beamon's car and they went to the store. At the Eagle, defendant purchased cereal, sausage, milk and eggs, while Beamon waited in the car. Beamon and defendant then drove to another grocery store, the Bread Box. Beamon went around to the back of the building and entered through a service entrance. The owner of the store confronted Beamon, who was throwing things around and rummaging through boxes. Beamon grabbed two cases of Perrier water, which he mistakenly believed contained liquor, and fled through the back door. An Aurora police officer noticed defendant and Beamon near a parked car. The officer parked his squad car behind Beamon's car. When they noticed the police officer in the squad car, defendant fled from the car, and Beamon casually walked away. The police found defendant hiding under a car a few blocks away. From Beamon's car, the police recovered two cartons containing Perrier water and a grocery bag.

According to the State's version of the facts, the passenger door of the car was open, and defendant was placing a case of what appeared to be beer into the car. Beamon was not holding anything.

According to defendant's version, Beamon drove with defendant to the Bread Box so that defendant could buy pop there. Beamon told defendant that he would wait in the car. Defendant bought four cans of pop, cigarettes and candy. When defendant came back to the car, Beamon was gone. Defendant looked for him and then waited by the car. Beamon came running out of the store carrying two cartons of Perrier. Defendant was putting his cans of pop in the Eagle bag when Beamon informed him that there was a police car behind defendant. Defendant panicked and fled.

The accomplice, Beamon, had pleaded guilty and was sentenced to probation prior to defendant's trial. He testified that defendant had no knowledge of Beamon's plan to rob the grocery store. According to Beamon, they went to the Bread Box because Beamon wanted pop and cigarettes. Beamon gave defendant $3 to purchase the items. After defendant went into the store, Beamon walked around to the back of the grocery store and broke in. Defendant was walking back to the car when Beamon returned with the two cartons. Beamon denied that he handed the boxes to defendant. Beamon testified that defendant was holding one can of pop and one pack of cigarettes.

The trial court determined that Beamon and defendant were not credible. First, the court found that Beamon had a motive to lie, namely, to protect defendant. Second, the court found defendant's and Beamon's story improbable. The court believed the testimony of the police officers.

Defendant was convicted of burglary based on his accountability for Beamon's actions. Under an accountability theory, the State must prove that the defendant solicited, aided or attempted to aid, abetted, or agreed with another person in the planning or commission of an offense; that the defendant's participation occurred either before or during the commission of the offense; and that the participation must have been with the concurrent, specific intent to promote or facilitate the commission of the offense. (*People v. Saunders* (1990), 206 Ill. App. 3d 1008, 1014; Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c).) The State does not have to prove that the defendant's participation was a part of the conduct which constituted the offense. (*Saunders*, 206 Ill. App. 3d at 1014.) Thus, the State had to prove that defendant intended to help Beamon commit the burglary and did some act, before or during the offense, in furtherance of it.

Defendant argues that his presence while Beamon was committing a burglary does not render him accountable for Beamon's conduct, nor does his knowledge that Beamon committed a crime. We agree with defendant that, if the evidence merely showed that defendant was present and was aware that Beamon was committing a burglary, defendant's conviction would have to be reversed. (*People v. Taylor* (1991), 219 Ill. App. 3d 47, 49.) However, other evidence refutes this argument.

As the court found, defendant loaded the stolen cartons into the car. We reject defendant's attempt to minimize the significance of the police officer's testimony that he saw defendant holding a "package." The officer testified that the "package" was not a bag. The State presented evidence from which the trial court could find that defendant took the cartons from Beamon and loaded them into the car. The trial court assessed the credibility of the witnesses, and it is the final arbiter of the facts. We will not disturb the factual determination that defendant put the cartons, not the Eagle bag, into Beamon's car.

That evidence is sufficient to establish the element that defendant aided or facilitated the commission of the offense. Defendant's assertion that there was insufficient evidence to show he participated in planning the burglary is irrelevant. Even if defendant was unaware, when he entered the store, that Beamon was going to burgle it, defendant's act of loading the booty which, by his own admission, he knew was stolen, is sufficient to show that he intended to aid in the commission of a burglary. The community of purpose or common design does not have to be based on prior deliberation, since such intent may arise by spontaneous participation. *People v. Brown* (1990), 197 Ill. App. 3d 907, 916.

These facts are similar to those in *People v. Clark* (1991), 221 Ill. App. 3d 303, in which the defendant denied any knowledge of a plan to steal a tile saw. The defendant was convicted on an accountability theory because he aided the perpetrator by "unsnagging" the saw so that the perpetrator could remove it from the defendant's delivery truck and by assisting in placing the saw in a dumpster. In affirming the conviction, this court found that, although the defendant did not have prior knowledge of the theft, his act of helping during the commission of the offense which he knew would help the perpetrator complete the offense was sufficient to satisfy the knowledge requirement. (*Clark*, 221 Ill. App. 3d at 309.) Here, defendant's assistance clearly occurred during the commission of the offense, as "the crime is not completed until the offender has escaped from the scene" (*People v.*

*Johnson* (1991), 220 Ill. App. 3d 550, 555). We therefore conclude that defendant was proved guilty of the offense beyond a reasonable doubt.

■ Defendant next contends that the trial court erred in denying him placement in the TASC program. A defendant is eligible for TASC if he is an addict "who is charged with or convicted of a crime" unless, among other things, that crime is a crime of violence; the defendant has a record of two or more convictions of a crime of violence; another felony proceeding is pending against him; the defendant is on probation or parole and the authority does not consent; or the defendant was placed in TASC on two prior occasions within a two-year period. (Ill. Rev. Stat. 1991, ch. 111½, par. 6360—1.) According to defendant, he was eligible for TASC, and the trial court erred in finding him ineligible because he denied that he committed the offense. When an eligible defendant elects to undergo treatment and the trial court finds the defendant is an addict or alcoholic and is likely to be rehabilitated, the defendant:

> "shall be placed on probation and under the supervision of a designated program for treatment *** unless, giving consideration to the nature and circumstances of the offense and to the history, character and condition of the individual, the court is of the opinion that no significant relationship exists between the addiction or alcoholism of the [defendant] and the crime committed, or that his imprisonment *** is necessary for the protection of the public." (Ill. Rev. Stat. 1991, ch. 111½, par. 6360—2.)

Defendant argues that the court erred in finding there was no significant relationship between the offense and defendant's addiction because defendant maintained his innocence.

In *People v. Otis* (1985), 135 Ill. App. 3d 718, the court decided the issue whether a defendant who has not pleaded guilty to the offense could be placed on TASC. After considering the statutory language and case law, the *Otis* court concluded that a defendant who has been convicted of an offense after a trial may elect treatment under TASC. *Otis*, 135 Ill. App. 3d at 720-21.

The State responds that the trial court denied defendant's TASC request because it found no significant relationship between the addiction and the offense and that defendant's imprisonment was necessary for the protection of the public. We disagree.

From our review of the record, it is evident that the trial court found that defendant was an addict and that he was eligible for

TASC. At a preliminary hearing in April 1990, the court and defense counsel discussed the pending TASC evaluation:

"MS. DIXON [defense counsel]: Well, Judge, you were the presiding Judge in a hearing last Thursday that I had with another defendant.

The Statute was changed to include the language, as you know, convicted or charged with, so that enabled the defendant to have right to know, prior to pleading or setting the cases for trial, whether you'd be amenable to placing him on T.A.S.C.

However, in terms of the nexus issue, one of the statutory requirements, you have indicated that you would be wanting what amounts to, essentially, an admission of the offense.

\*\*\* Mr. House would not be admitting to the burglary, and I don't want to place him into a position of having that admission attempt to be elicited by my question or State's Attorney's question, and we would rather be asking for T.A.S.C. if he's found guilty of that case at a sentencing hearing.

\* \* \*

THE COURT: There's a problem. I give everybody T.A.S.C. if there's a nexus. If I don't know there's a nexus, how can I give him T.A.S.C.?"

Several months later, after defendant was found guilty of the offense, the following colloquy ensued:

"MR. O'NEIL [prosecutor]: \*\*\* I don't think he is eligible in that he denied the offense, in that he can't prove up the cause of nexus between an offense and an addiction of—

MISS DIXON: If you look at that provision, 111½, 6360, I believe it permits you to sentence to TASC after conviction. Or when the person is charged with it. And so you now have found him guilty. The nexus is proven up through questions of what you have heard here about his addiction. And, in fact, with Mr. House, Judge, you could even take judicial notice of his track marks in his arm. But we will get to that issue.

THE COURT: I have a problem there. How are you going to prove the nexus? He said he doesn't—didn't do this?

MISS DIXON: Judge, the questions have not been elicited in the course of trial about what, if anything he was under the influence of that day.

THE COURT: Okay. Let's say he was under the influence of everything in the world, right? He said he didn't do this.

MISS DIXON: That's right, Judge, but you—you found according to the facts that he had done so. The person certainly has a right to a trial, Judge.

THE COURT: Well, we will *** face that matter of the nexus when we have the TASC hearing. He may not be eligible for TASC."

At the TASC hearing on October 19, 1990, the court heard evidence that defendant was a cocaine and heroin addict and that defendant used cocaine the morning of the burglary. The TASC representative found that defendant had a likelihood of rehabilitation. Defendant testified that he stole to get money to support his addiction. In an unrelated incident, defendant stole liquor which he intended to sell. However, defendant denied that he committed the burglary. Regarding the burglary conviction, the court stated, "I would say he's not eligible for T.A.S.C. because there's no significant connection between his addiction and the charge because he says he didn't do it." The assistant State's Attorney then nol-prossed the unrelated pending charges. The court then explained its ruling:

"[I]t raises the interesting, and as public defender has said and I don't know that there is or is not a case on point, the interesting proposition that if a person who has clearly been shown to be an addict, and that has appeared here, and the person who has been shown to be likely to be rehabilitated, which was testified to here, and that the person is appropriate for placement, which has been testified to here, if all this is there, but we have a situation where the defendant has been found guilty rather than having pled guilty, whether they're eligible when they have said they haven't done it; it would appear to me, and I guess I'm going to rule this way so that the appellate court can have a clear shot at writing an opinion on this, that if a person pleads not guilty, then they are more or less saying they didn't do it; therefore there is no significant relationship existing between the addiction of the individual and the crime charged.

I have changed one word. Instead of 'committed,' I'm saying 'charged.' Interesting proposition.

So, his T.A.S.C. petition, the motion the state has made that I deny will now be granted since the situation has changed. He's not eligible."

■ As the above-quoted portions of the record demonstrate, the only reason the court denied defendant's request was the court's belief that if a defendant maintains his innocence of the offense, there

can be no significant relationship between it and the addiction. We emphasize that this was not a situation where the decision to deny a TASC request was made at a sentencing hearing. (See, *e.g., People v. Moore* (1990), 206 Ill. App. 3d 769; *People v. Douglas* (1990), 200 Ill. App. 3d 186; *People v. Brown* (1989), 194 Ill. App. 3d 958.) The court held a bifurcated proceeding and did not consider any of the sentencing evidence or issues during the TASC hearing. The court did not find that imprisonment was more appropriate for defendant; but, rather, the court found defendant was ineligible.

We agree with the reasoning in *Otis* and find that the statute did not envision a Hobson's choice for defendants whereby they would have to admit guilt and forgo an appeal of a conviction to be entitled to TASC, or require the State to prove the charge beyond a reasonable doubt and lose any possibility of treatment. We note parenthetically that the State concedes that a defendant may not be denied TASC merely because he pleaded not guilty to the offense.

The trial court has broad discretion to deny or grant a defendant's request for treatment. (*Moore,* 206 Ill. App. 3d at 775.) Where the trial court refused to exercise its discretion due to a misunderstanding of the law, remand of the matter to the trial court is proper. (*People v. Fiorini* (1991), 143 Ill. 2d 318, 344; *People v. Rivera* (1991), 212 Ill. App. 3d 519, 529.) Therefore, we remand the cause to the trial court for a new sentencing hearing in accordance with the views expressed herein.

Defendant's conviction is affirmed; the sentence is vacated, and the cause is remanded.

Affirmed in part; vacated in part and remanded.

WOODWARD and GEIGER, JJ., concur.