631 N.E.2d 883 (1994)
259 Ill. App.3d 637
197 Ill.Dec. 661
In re D.C., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. D.C., Respondent-Appellant).
No. 2-92-0785.
Appellate Court of Illinois, Second District.
March 30, 1994.
*884 G. Joseph Weller, Deputy Defender, Kim M. DeWitt, Dan W. Evers, Office of the State Appellate Defenders, Daniel M. Kirwan, Deputy Defender, Office of State Appellate Defender, Mt. Vernon, for "D.C.", Minor.
Michael J. Waller, Lake County State's Attorney, William L. Browers, Deputy Director, Stephen E. Norris, Deputy Director, Kendra S. Mitchell, Mary H. Doyle, Staff Atty., State's Attys. Appellate Prosecutor, for the People.
Justice BOWMAN delivered the opinion of the court:
Respondent, D.C., was adjudicated delinquent and committed to the Department of Corrections after the trial court found that he committed a burglary (Ill.Rev.Stat.1991, ch. 38, par. 19-1(a) (now 720 ILCS 5/19-1(a) (West 1992))). The sole issue for review is whether the State proved beyond a reasonable doubt that respondent committed the offense.
The three-count petition for adjudication of wardship alleged that respondent burglarized three vehicles. At the hearing, Jasper Lombardo testified that he lived at 431 Filweber Court in Antioch. On May 13, 1992, his vehicle was parked in the southeast corner of his apartment's parking lot. Around 5 a.m., a neighbor informed Lombardo that his vehicle had been broken into. The door to the vehicle was standing open, and Lombardo's graphic equalizer was missing. When Lombardo had last seen his vehicle, at 8:30 the previous evening, the equalizer was in it. Lombardo next saw the equalizer at the police station.
Sergeant Robert Lange, of the Antioch police department, testified that he responded to a dispatch of a burglary to a motor vehicle in progress. Lange saw a station wagon turn off Filweber Court, and he stopped the vehicle there. Officer Somerville arrived and assisted Lange with the stop. Lange recalled that respondent was sitting in the front passenger seat. When respondent exited the car, a flashlight and a black cap fell to the ground. Somerville told Lange that the person who reported the burglary, Patricia Pink, advised him that a cellular telephone had been taken from her vehicle. The officers saw a cellular telephone, an equalizer, and a cassette player on the floor in the backseat of the station wagon.
Officer Greg Somerville testified that he received a call around 3 a.m. of a burglary to a vehicle. He went to speak with Pink, who told him that she heard a noise in the driveway and looked out the window. She saw two people inside of the vehicle. When she turned on the porch light, they fled. She did not see their faces.
Somerville further testified that he went to assist with the stop of the station wagon two blocks from Pink's home. Sergeant Lange had stopped the vehicle a few minutes after Somerville went to Pink's residence, and it took Somerville only 45 seconds to arrive at the scene of the stop. According to Somerville, *885 respondent was seated behind the driver, and at his feet were the cellular telephone, the equalizer, and the cassette player. Somerville also stated that when respondent got out of the car something fell to the ground, although Somerville did not notice what it was. Pink identified the cellular phone found in the station wagon as the one taken from her vehicle.
Officer Ronald Roth testified that he questioned respondent about the burglaries. Respondent told him that he and the three others were "partying" and he decided he wanted to visit his girlfriend who lived in Antioch. One of respondent's friends drove them to Antioch in respondent's grandmother's car. The four went to the Filweber Court apartments. Respondent went to the back window and spoke to his girlfriend. He tried to convince her to come out, but she could not. Respondent returned to the parking lot and found his friends going through the parked cars looking for things to steal. At that point, respondent joined them. From there they walked to a white house a couple blocks away. One of respondent's friends went into a vehicle and stole a car phone. Respondent stated that he did not go inside the car, but stood at the end of the driveway. The friend accidentally hit the car's horn, so the four ran back to respondent's grandmother's car and left. Roth asked respondent about the equalizer and the cassette player in the car. Respondent said that he saw the items sitting in the front seat of the car before the boys went to the white house, but he did not know they were stolen.
Respondent did not testify and presented no evidence. Respondent moved for a directed finding. The court granted it as to two counts of the petition, finding that the State failed to prove the "corpus" of those counts because the owners of the vehicles at issue in those counts did not testify. The court denied the motion as to the count involving Lombardo's vehicle. Following the arguments of counsel, the court stated its findings.
First, the court refused to consider the evidence of the cellular telephone and the cassette player. The court found that respondent's statement to the police was a "critical" piece of evidence. Although the court believed some of the statement, it did not accept all of it because some of respondent's statements were refuted by circumstantial evidence. The court explained:
"[Respondent] decided he wanted to go see his girlfriend, * * * and while he was trying to convince her to come out at that hour of the morning, and we don't know how long it was, but at the point that he decided it was fruitless to continue, he returned to where he had left his three friends with his grandmother's car.
And he said he found his three friends looking through, and this is important, parked cars with an `S', more than one, indicating actively looking at the time he arrived, and he said `for things to steal'.
Now if it ended there, there would not be enough circumstantial evidence to believe there was more participation or that this was a group activity. However, he then went on to add that since he knew at that point that they were looking for things to steal, at this point the minor consciously decides to continue the illegal activity, and walked with the other people to other cars indicating active participation in the ongoing rifling of cars, and at this point, they move on to new cars to go through and that clearly is the turning point as far as evidence."
The court also noted that the evidence further showed respondent aided and abetted and that the equalizer was found at respondent's feet in the car. The court determined that if respondent had no intention of continuing with the illegal activity, he would have returned to his grandmother's car. The court concluded that the circumstantial evidence overwhelmingly established that respondent actively participated in the burglaries. Respondent timely appealed.
Respondent contends that the State failed to prove beyond a reasonable doubt that he burglarized Lombardo's vehicle. To support a finding of delinquency, the State must prove beyond a reasonable doubt the commission of an offense. (Ill.Rev.Stat. 1991, ch. 37, par. 805-18 (now 705 ILCS 405/5-18 (West 1992)); In re M.L. (1992), 232 Ill. App.3d 305, 307, 174 Ill.Dec. 15, 597 N.E.2d *886 1227.) When confronted with a challenge to the sufficiency of the evidence, the reviewing court must consider all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (People v. Campbell (1992), 146 Ill.2d 363, 374, 166 Ill.Dec. 932, 586 N.E.2d 1261.) This standard applies in all cases, regardless of whether the evidence is direct or circumstantial. (People v. Pintos (1989), 133 Ill.2d 286, 291, 139 Ill.Dec. 832, 549 N.E.2d 344.) The elements of burglary as charged here are entering a motor vehicle, knowingly and without authority, with the intent to commit a theft therein. (Ill.Rev.Stat.1991, ch. 38, par. 19-1(a) (now 720 ILCS 5/19-1(a) (West 1992)).) We must not substitute our judgment for that of the trier of fact on questions of the weight of the evidence or the credibility of the witnesses. People v. Sutherland (1992), 155 Ill.2d 1, 17, 182 Ill.Dec. 577, 610 N.E.2d 1.
Respondent was adjudicated delinquent on the basis of his accountability for his friends' actions. A person is accountable for the conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill.Rev.Stat.1991, ch. 38, par. 5-2(c) (now 720 ILCS 5/5-2(c) (West 1992)).) The State needed to prove that respondent intended to help his friends commit the burglary to Lombardo's vehicle and that respondent did some act, before or during the offense, in furtherance of it.
Although the State asserts that the trial court found that respondent knew his friends would burglarize cars when he went to see his girlfriend, the record does not support the State's interpretation. The trial court found that respondent was aware that his friends were burglarizing cars after he saw his girlfriend. It was at that point that respondent shared their intent and participated in vehicle burglaries.
In his initial brief, respondent argues that the trial court found him accountable for actions after the burglary was completed. If the crime had ended before respondent joined his friends and developed the intent to aid or abet, he could not be accountable for the offense. (See People v. Clark (1991), 221 Ill.App.3d 303, 308, 163 Ill.Dec. 568, 581 N.E.2d 722 (being an accessory after the fact is not a crime in Illinois).) The parties were ordered to submit supplemental briefs to further develop the issue whether the burglary was completed before respondent joined his friends and participated in other burglaries. Specifically, the question is, for purposes of accountability, when does a burglary end? Respondent asserts that the burglary ended when his friends left Lombardo's vehicle. The State responds that the crime did not end until the offenders had escaped from the scene.
In People v. House (1992), 232 Ill.App.3d 309, 312-13, 174 Ill.Dec. 4, 597 N.E.2d 1216, this court affirmed the defendant's conviction of burglary on the theory of accountability where he helped the burglar load cartons of stolen goods into a car. We concluded that the evidence established the defendant's accountability even though he did not know that his friend was going to burglarize the store. The defendant's act of loading the goods, which he knew were stolen, was sufficient to show that he intended to aid in the commission of the burglary, and the assistance occurred during the commission of the offense, even though the burglar had left the building with the property before the defendant assisted him. House, 232 Ill.App.3d at 312, 174 Ill.Dec. 4, 597 N.E.2d 1216.
House relied on People v. Johnson (1991), 220 Ill.App.3d 550, 555, 163 Ill.Dec. 167, 581 N.E.2d 118, where the court ruled that "the crime is not completed until the offender has escaped from the scene." Johnson in turn relied on People v. Gil (1984), 125 Ill.App.3d 892, 81 Ill.Dec. 403, 466 N.E.2d 1205, for that rule. (See also People v. Mumford (1979), 70 Ill.App.3d 395, 400, 26 Ill.Dec. 80, 387 N.E.2d 910.) This rule in accountability cases derives from People v. Johnson (1973), 55 Ill.2d 62, 302 N.E.2d 20, a felony-murder case. (See also People v. Hickman (1974), 59 Ill.2d 89, 94, 319 N.E.2d *887 511 (the escape is part of the crime itself).) However, none of the accountability cases consider whether the felony-murder escape rule should be applied to an accountability analysis. Respondent argues that it should not. We agree.
The felony-murder rule is codified in section 9-1(a)(3) of the Criminal Code of 1961, which provides that a person commits first degree murder if, in performing the acts which cause the death, the person is committing or attempting a forcible felony. (Ill.Rev. Stat.1991, ch. 38, par. 9-1(a)(3) (now 720 ILCS 5/9-1(a)(3) (West 1992)).)
"Under the felony-murder doctrine, a person who commits a felony is liable for any murder that occurs during the commission of that felony, regardless of whether he or she commits, attempts to commit, or intended to commit that murder. The doctrine thus imposes liability on felons for killings committed by cofelons during a felony." (Emphasis omitted.) Tison v. Arizona (1987), 481 U.S. 137, 159, 107 S.Ct. 1676, 1689, 95 L.Ed.2d 127, 145 (Brennan, J., dissenting).
A cofelon's vicarious liability for a death which occurs in the course of another felony is established not by felony-murder principles but by the principles of parties to crimes. (2 W. LaFave & A. Scott, Substantive Criminal Law § 7.5, at 211 (1986).) Illinois' courts have interpreted the felony-murder rule to expand a felon's liability beyond agency concepts for deaths occurring as a result of a felony. (People v. Brown (1979), 70 Ill.App.3d 922, 925, 27 Ill.Dec. 204, 388 N.E.2d 1253.) Our supreme court, in People v. Bongiorno (1934), 358 Ill. 171, 192 N.E. 856, set forth an analysis for determining whether a defendant was guilty of felony murder. It first considered whether the defendant was a party to the crime under accountability principles, and then it stated the rule that where persons conspire to commit a robbery, the escape from the scene is part of the crime of robbery. (Bongiorno, 358 Ill. at 173, 192 N.E. 856.) In analyzing People v. Hickman, the Brown court noted that Hickman did not apply the accountability principles of section 5-2 of the Criminal Code (Ill.Rev.Stat.1991, ch. 38, par. 5-2 (now 720 ILCS 5/5-2 (West 1992))) to determine whether the death occurred during the commission of the felony. (Brown, 70 Ill.App.3d at 926, 27 Ill.Dec. 204, 388 N.E.2d 1253.) These cases support respondent's position that accountability principles and the felony-murder escape rule have theoretically different underpinnings and purposes.
Accountability principles apply to determine whether a defendant is a party to the crime; only if it is determined that the defendant participated either before or during the crime may the court then consider whether the death occurred during the commission of the offense. This latter determination is broader than the determination of the respondent's participation because it is based on proximate cause, that is, whether the unlawful taking of a human life is reasonably expected to result from the commission of the offense (Bongiorno, 358 Ill. at 175-76, 192 N.E. 856).
Moreover, "[a]ccountability is not in and of itself a crime, but rather a method through which a criminal conviction may be reached." (People v. Stanciel (1992), 153 Ill.2d 218, 233, 180 Ill.Dec. 124, 606 N.E.2d 1201.) If the crime itself does not include escape as an element, it follows that the escape should not be considered part of the crime for determining whether the accused committed the crime. (See People v. Cooper (1991), 53 Cal.3d 1158, 1169, 282 Cal.Rptr. 450, 458, 811 P.2d 742, 750 (court declined to apply felony-murder escape rule to accountability, as it would incorporate escape as an element of the crime, whereas "in delineating a crime it is logical to look to the elements that constitute that crime").) We therefore decline to follow Mumford and its progeny, and we conclude that the escape is not a part of the offense for purposes of determining accountability.
Finally, we consider whether the evidence established beyond a reasonable doubt that respondent's participation occurred during the burglary to Lombardo's vehicle. In People v. Zierlion (1959), 16 Ill.2d 217, 157 N.E.2d 72, four men entered a warehouse and pushed a safe out of a window. Because the safe was too heavy for them to move, they went to a tavern and enlisted the help of *888 the defendant and another man. When they returned to the yard of the warehouse, they were arrested. The defendant was convicted of burglary on the theory of accountability. The supreme court reversed the conviction, holding that the defendant was merely an accessory after the fact, as there was no evidence that the defendant did anything other than assist with the safe which had already been taken out of the building. Zierlion, 16 Ill.2d at 219, 157 N.E.2d 72.
Here, the State failed to present evidence to show that respondent's friends burglarized Lombardo's vehicle after respondent joined them. Thus, as in Zierlion, the evidence merely establishes that respondent assisted his friends after their illegal entry and exit. We therefore conclude that the State failed to prove beyond a reasonable doubt that respondent aided and abetted the burglary to Lombardo's vehicle, and the respondent's adjudication must be reversed.
The judgment of the circuit court is reversed.
Reversed.
QUETSCH, J., concurs.
Presiding Justice INGLIS, dissenting:
I respectfully dissent.
By holding that the escape rule applies only in felony-murder cases, the majority disregards a decade of established case law beginning with People v. Mumford (1979), 70 Ill.App.3d 395, 26 Ill.Dec. 80, 387 N.E.2d 910, and culminating in People v. House (1992), 232 Ill.App.3d 309, 174 Ill.Dec. 4, 597 N.E.2d 1216. "[F]or purposes of determining legal accountability, the crime is not completed until the offender has escaped from the scene." (People v. Johnson (1991), 220 Ill. App.3d 550, 555, 163 Ill.Dec. 167, 581 N.E.2d 118.) Although, as the majority notes, this rule derives from a felony murder case, there is no Illinois authority that rejects the escape rule in an accountability analysis.
In People v. House (1992), 232 Ill.App.3d 309, 174 Ill.Dec. 4, 597 N.E.2d 1216, as the majority notes, this court found the defendant accountable for burglary, where he assisted a burglar in loading stolen goods, because the crime was not complete until the burglar escaped the scene of the crime. (House, 232 Ill.App.3d at 312, 174 Ill.Dec. 4, 597 N.E.2d 1216.) In Johnson, the appellate court found the defendant accountable for robbery, where he fled the scene of a robbery in which he acquiesced, carrying the proceeds and disposing of them immediately before his apprehension. (Johnson, 220 Ill. App.3d at 555-56, 163 Ill.Dec. 167, 581 N.E.2d 118.) The court reasoned that the robbery was not completed until the robbers had escaped the scene. Johnson, 220 Ill. App.3d at 555, 163 Ill.Dec. 167, 581 N.E.2d 118.
In People v. Gil (1984), 125 Ill.App.3d 892, 81 Ill.Dec. 403, 466 N.E.2d 1205, the appellate court found the defendant accountable for voluntary manslaughter, where he acquiesced in a shooting and prevented life-saving intervention, because "a crime is not completed until the offender has escaped from the scene." (Gil, 125 Ill.App.3d at 896, 81 Ill.Dec. 403, 466 N.E.2d 1205.) In People v. Mumford (1979), 70 Ill.App.3d 395, 26 Ill.Dec. 80, 387 N.E.2d 910, the appellate court found the defendant accountable for murder, where he acquiesced in a shooting and prevented the victim's escape, because "a criminal act is not completed until the offender has escaped from the scene." Mumford (1979), 70 Ill.App.3d at 400, 26 Ill.Dec. 80, 387 N.E.2d 910.
"The crime," "a crime," "a criminal act": none of these cases concerns or even mentions felony murder. They all address when a crime is complete for purposes of accountability. The majority's discussion of felony murder clouds the central issue: whether the crime of burglary was completed when respondent's friends exited Lombardo's vehicle or when the four men fled the scene in the vehicle supplied by the respondent. According to this line of cases, the crime ended when the four men escaped in respondent's grandmother's car.
To be accountable, the accused's participation need not be part of the conduct constituting the offense. (House, 232 Ill.App.3d at 311, 174 Ill.Dec. 4, 597 N.E.2d 1216.) In House, this court affirmed the defendant's conviction of burglary on the theory of accountability, *889 where he helped the burglar load cartons of stolen goods into a car. (House, 232 Ill.App.3d at 312-13, 174 Ill.Dec. 4, 597 N.E.2d 1216.) We concluded that the evidence established the defendant's accountability, even though he did not know that his friend was going to burglarize the store. The defendant's act of loading the goods, which he knew were stolen, was sufficient to show that he intended to aid in the commission of the burglary. (House, 232 Ill.App.3d at 312, 174 Ill.Dec. 4, 597 N.E.2d 1216.) The assistance occurred during the commission of the offense, even though the burglar had left the building with the property before the defendant assisted him. House, 232 Ill. App.3d at 312, 174 Ill.Dec. 4, 597 N.E.2d 1216.
Thus, in the present case, the burglary of Lombardo's vehicle did not end until respondent and his friends got in respondent's grandmother's car and drove away. Respondent emphasizes his statement to the police that when he joined his friends, he saw the equalizer and the cassette player in his grandmother's car; therefore the items may have been in the vehicle before respondent joined his friends. That, however, is immaterial.
The court found that respondent knew his friends were stealing things, and it discounted respondent's statement that he did not know the equalizer was stolen. The court also found that the items were in the backseat at respondent's feet when the car was stopped by the police. Even if the court credited respondent's statement that the equalizer was in the front seat of the car before he joined his friends, the facts indicate that respondent allowed the perpetrators to use his grandmother's car to carry away the stolen goods. This act would aid the perpetrators during the commission of the offense and, combined with respondent's intent to facilitate the offense, establishes his accountability. Respondent admitted he and his friends ran back to his grandmother's car after the last burglary, in which he acted as a lookout. Also, the equalizer was found at respondent's feet. I therefore conclude that the evidence establishes beyond a reasonable doubt that respondent committed a burglary to Lombardo's vehicle.
The majority's reliance on People v. Zierlion (1959), 16 Ill.2d 217, 157 N.E.2d 72, is misplaced. Although that case concerned a burglary, the offenders had escaped to a place of safety before enlisting the defendant. (Zierlion, 16 Ill.2d at 218, 157 N.E.2d 72.) The crime was completed before the defendant became involved. Zierlion, 16 Ill.2d at 219, 157 N.E.2d 72.
For these reasons, I would affirm the decision of the trial court.