678 N.E.2d 358 (1997)
287 Ill. App.3d 254
222 Ill.Dec. 746
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Tory R. TAYLOR, Defendant-Appellant.
No. 2-94-1201.
Appellate Court of Illinois, Second District.
March 27, 1997.
*359 G. Joseph Weller, Deputy Defender, Thomas A. Lilien, Asst. Defender, Colleen M. Chang, Office of the State Appellate Defender, Elgin (court appointed), for Tory R. Taylor.
*360 Paul A. Logli, Winnebago County State's Attorney, Rockford, William L. Browers, Deputy Director, State's Attorneys Appellate Prosecutor, Richard S. London, State's Attorneys Appellate Prosecutor, Elgin, for the People.
Justice HUTCHINSON delivered the opinion of the court:
Defendant, Tory Taylor, appeals his conviction of aggravated discharge of a firearm (720 ILCS 5/241.2(a) (West 1994)). Defendant asserts that (1) he was not proved guilty of the crime beyond a reasonable doubt; (2) the trial court erred in refusing to answer a jury inquiry; and (3) the prosecutor sought to indoctrinate the potential jurors during voir dire. We affirm.
This case arose from a traffic altercation on August 28, 1993, in Rockford, Illinois. Defendant, who was 15 years old at the time, was driving his stepfather's car, a blue Chevrolet Celebrity, accompanied by his friend, Lynn Hollingshed. Witnesses testified that defendant was the driver of the car, and Hollingshed was a passenger sitting in the front seat. Defendant testified that he was wearing shorts and Hollingshed was wearing black overalls, worn backwards, a black, long-sleeved shirt, and a hat. Both had been riding around town for approximately seven hours. During that time, Hollingshed showed defendant a .25-caliber handgun that he had pulled out of his pocket. At approximately 7:30 p.m., defendant turned from a larger street onto a side street.
Edward Dawson, his wife Alta, and a friend were traveling on a two-lane, two-way street on their way to a wedding reception. Vehicles were parked on both sides of the street, reducing the lane size. Defendant turned onto this street as Edward was approaching the intersection. Beyond these facts, the accounts of the incident vary. Edward and Alta testified that defendant's car came quickly around the corner, occupied a part of both lanes, and forced their vehicle close to a parked car. Defendant testified that the street was too narrow for both cars to pass, so he stopped his car and backed it up to allow the other vehicle to pass.
Edward and Alta both exited their car, allegedly to look for damage done to the parked car. They testified that the passenger in the Celebrity also got out of the Celebrity. Edward asked whether the young man had a "problem." Defendant testified that Edward had said, "You got a problem you fuckin' niggers?" as Edward drove past. Both Edward and Alta testified that the passenger was wearing black overalls, turned backwards, a black shirt, and a hat. They also testified that the passenger had a small, black machine gun in his left hand. Edward identified the passenger as the defendant during a photographic lineup and at trial. When asked if he had a problem, the youth responded, "Yes, I got a fuckin' problem, white boy." To emphasize his point, the passenger removed a small handgun and fired it in Edward's direction. Defendant testified that the shot was fired upward, and Edward testified that the bullet "whizzed" past his ear. Edward testified that he jumped back into his car as another bullet was fired. Alta, who had also exited the car, reentered the car and wrote down the license plate number of defendant's vehicle. The shooter then reentered the Celebrity and the car left the scene. The Dawsons went to the closest service station and called the police.
Defendant testified that Hollingshed was the shooter. Hollingshed was angered by Edward's alleged racial slur and had told defendant to stop the car. Hollingshed did not indicate why he wanted defendant to stop the car, nor did he give any reason for exiting the car. Defendant testified that he was startled when the first shot rang out. After firing two shots in the air, Hollingshed came back to defendant's car. Defendant asked Hollingshed why he fired the shots, but received no response from him. Defendant then drove quickly from the scene.
Defendant drove to his brother's house, but he was not home. He then drove to where his stepfather works, but the stepfather was still working and unable to meet with defendant. Finally, defendant went to the house of his uncle, Desmond Taylor. Taylor drove defendant and Hollingshed towards a friend's house, but defendant and Hollingshed left the car when they saw a *361 police car making a U-turn to follow their car. The officer had apparently identified the vehicle as the car involved in the shooting from the Dawsons' description of the car and its license plate number. The officer stopped Taylor and obtained defendant's and Hollingshed's names.
Defendant and Hollingshed ran for a couple of blocks until they found a friend of defendant's mother, who drove them to the house of defendant's friend. Hollingshed left the friend's house after a short period to go to the hospital for treatment of a cut he had received during their flight from Taylor's vehicle. Defendant remained at the friend's house until late in the evening.
Defendant was arrested, and a grand jury later indicted him for aggravated discharge of a firearm. Defendant submitted a motion to suppress his identification as the shooter, because he was the only person wearing a black, long-sleeved shirt in the photo array presented to Edward and Alta. The motion was denied. However, because the State changed the direction of the prosecution, arguing that defendant was the driver and not the shooter, the denial of this motion was not raised on appeal.
During voir dire, defendant and the State used hypotheticals to determine potential jurors' ability to understand the nature of the case. Defense counsel made repeated objections to the State's hypotheticals, arguing that the State was attempting to indoctrinate the jury. After both sides had presented their case at trial, during jury deliberations the jury sent a question to the trial court. The jury asked for a definition of the term "offense" as it related to "aiding and abetting." The trial court answered, "You have your instructions as they apply to the facts, and you must apply your recollection of the facts to those instructions." After another four-hour period of deliberation, the jury found defendant guilty.
Defendant first argues that he was not proved guilty beyond a reasonable doubt of aggravated discharge of a firearm under the theory of accountability. In assessing whether the evidence against a defendant was sufficient to prove guilt beyond a reasonable doubt, a reviewing court must determine "`"whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" (Emphasis omitted.) People v. Furby, 138 Ill.2d 434, 455, 150 Ill.Dec. 534, 563 N.E.2d 421 (1990), quoting People v. Collins, 106 Ill.2d 237, 261, 87 Ill.Dec. 910, 478 N.E.2d 267 (1985), quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). A defendant's conviction should not be set aside on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that a reasonable doubt exists about the defendant's guilt. Furby, 138 Ill.2d at 455, 150 Ill.Dec. 534, 563 N.E.2d 421. Our statute on accountability states that a defendant is legally accountable for the actions of another when:
"(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, [she or] he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5-2(c) (West 1994).
Defendant argues that the offense was completed when Hollingshed fired the handgun at Dawson, and he was, therefore, not involved in the offense either before or during its commission.
A person may not be held accountable for a crime merely for being present (People v. Melgoza, 231 Ill.App.3d 510, 537, 172 Ill.Dec. 591, 595 N.E.2d 1261 (1992)), nor will a person generally be rendered accountable for acquiescing to the criminal activities of another (People v. Miscichowski, 143 Ill. App.3d 646, 655, 97 Ill.Dec. 653, 493 N.E.2d 135 (1986)).
"In order to establish guilt based upon a theory of legal accountability, the State must prove beyond a reasonable doubt that either before or during the commission of the offense, the defendant solicited, aided, abetted, agreed[,] or attempted to aid another person in the commission of the offense and that such participation was with the concurrent, specific intent to promote or facilitate the commission of the offense." *362 People v. Novy, 232 Ill.App.3d 631, 664, 173 Ill.Dec. 565, 597 N.E.2d 273 (1992).
The question then is whether defendant helped to facilitate the commission of the offense by providing Hollingshed with an escape from the scene of the offense.
Defendant directs this court's attention to our recent opinion, In re D.C., 259 Ill.App.3d 637, 197 Ill.Dec. 661, 631 N.E.2d 883 (1994). In D.C., a minor was convicted of burglary under the theory of accountability. The defendant was present with some friends when they burglarized a vehicle, and the defendant was convicted of a burglary that occurred before he joined them. This court overturned his conviction, finding that, "[i]f the crime itself does not include escape as an element, it follows that the escape should not be considered part of the crime for determining whether the accused committed the crime." In re D.C., 259 Ill.App.3d at 643, 197 Ill.Dec. 661, 631 N.E.2d 883.
We do not find this rationale persuasive. We believe the reasoning in the dissenting opinion in D.C. to be sound. As Presiding Justice Inglis correctly noted in that dissent, the majority opinion is contrary to an established line of cases holding that escape is to be considered an element of the offense for accountability purposes. See, e.g., People v. House, 232 Ill.App.3d 309, 174 Ill.Dec. 4, 597 N.E.2d 1216 (1992); People v. Johnson, 220 Ill.App.3d 550, 163 Ill.Dec. 167, 581 N.E.2d 118 (1991); People v. Gil, 125 Ill.App.3d 892, 81 Ill.Dec. 403, 466 N.E.2d 1205 (1984); People v. Mumford, 70 Ill.App.3d 395, 26 Ill.Dec. 80, 387 N.E.2d 910 (1979). In D.C., the minor was aware that his friends had committed a crime, and he made a conscious decision to remain with them during the commission of another crime and to provide them with a way to escape the scene. As a result, we believe that the minor was correctly found to be accountable for the crime by the trial court. Therefore, we adopt the standard from House and overrule any portion of In re D.C. that is contrary to this standard.
Defendant also cites People v. Dennis, 271 Ill.App.3d 1041, 208 Ill.Dec. 423, 649 N.E.2d 479 (1995), for the proposition that escape is not necessarily a component of an offense for accountability purposes. In Dennis, the defendant drove a friend away from the scene of a crime, but he only became aware that the crime had been committed after the escape. The court reasoned that "[f]light from the scene does not elongate the offense of robbery." Dennis, 271 Ill.App.3d at 1046, 208 Ill.Dec. 423, 649 N.E.2d 479. The Dennis case is, however, factually distinguishable from the present case. In the present case, defendant was acutely aware of the crime during its commission and made the conscious decision to aid Hollingshed's flight from the scene.
We find the well-established precedents of this court to be persuasive. "[A] criminal act is not completed until the offender has escaped from the scene." Mumford, 70 Ill.App.3d at 400, 26 Ill.Dec. 80, 387 N.E.2d 910. This holding was echoed by the court in Gil, which similarly held that "a crime is not completed until the offender has escaped from the scene." Gil, 125 Ill.App.3d at 896, 81 Ill.Dec. 403, 466 N.E.2d 1205. In the present case, the actual act of aggravated discharge of a firearm may have been completed when the firearm was discharged, but the crime was not completed for the purposes of accountability. Defendant may not have fired the handgun, but he did knowingly provide Hollingshed with a very effective way to escape. After viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime of aggravated discharge of a firearm beyond a reasonable doubt.
Defendant's second issue on appeal is that the trial court erred in refusing to clarify the law of accountability to the jury. Jurors are entitled to have their questions answered, and "the trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion." People v. Childs, 159 Ill.2d 217, 228-29, 201 Ill.Dec. 102, 636 N.E.2d 534 (1994), citing People v. Reid, 136 Ill.2d 27, 39, 143 Ill.Dec. 239, 554 N.E.2d 174 (1990); see also People v. Landwer, 279 Ill.App.3d 306, 314, 216 Ill. Dec. 40, 664 N.E.2d 677 (1996). Under certain *363 circumstances, a trial court's refusal to answer the jury's question may be held to be prejudicial error. See, e.g., People v. Shannon, 206 Ill.App.3d 310, 151 Ill.Dec. 221, 564 N.E.2d 198 (1990). The rule, as explained by the Childs court, is:
"A trial court may exercise its discretion and properly decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or if the giving of an answer would cause the court to express an opinion which would likely direct a verdict one way or another." Childs, 159 Ill.2d at 228, 201 Ill.Dec. 102, 636 N.E.2d 534.
For this inquiry, whether the jury was properly instructed before the beginning of deliberations is irrelevant. People v. Kittinger, 261 Ill.App.3d 1033, 1038-39, 199 Ill.Dec. 377, 633 N.E.2d 1368 (1994).
In the present case, the trial court refused to provide the jury with a definition of the term "offense" as it related to aiding and abetting. The trial court responded to the jury's inquiry by sending the jury a note stating, "You have your instructions as they apply to the facts and you must apply your recollection of the facts to those cases." Defendant argues that the trial court erred because its answer merely created more confusion over the definition of a term contained in the jury instructions. The State asserts that the jury's inquiry was "demonstrably ambiguous" and could not have been answered without a colloquy between the court and the jury. We agree with the State.
The trial court could have provided the jury with a definition of the term "offense" as it is contained in our statute by responding that an "`[o]ffense' means a violation of any penal statute of this State" (720 ILCS 5/2-12 (West 1994)). However, this would not necessarily have provided the jury with any guidance. In fact, the jury appeared to be looking for a definition that might require the trial court to comment on a question of fact, to express an opinion which would likely direct a verdict one way or another or, at the very least, to ask the jury additional questions to clarify the request. Therefore, we determine that the trial court properly refused to answer the jury's inquiry.
Defendant's final argument is that the State improperly sought to indoctrinate the jurors during voir dire through the use of hypotheticals. The trial court has primary responsibility for conducting voir dire examination in criminal cases, and the scope, extent, and manner of questioning rest within the discretion of the trial court. 134 Ill.2d Rs. 234, 431; see also People v. Hope, 168 Ill.2d 1, 30, 212 Ill.Dec. 909, 658 N.E.2d 391 (1995); People v. Szudy, 262 Ill.App.3d 695, 708, 200 Ill.Dec. 462, 635 N.E.2d 801 (1994). The purpose of voir dire is to ascertain sufficient information about prospective jurors' beliefs and opinions to permit the removal of those members of the venire who are unable or unwilling to be impartial. People v. Oliver, 265 Ill.App.3d 543, 548, 202 Ill.Dec. 437, 637 N.E.2d 1173 (1994). The purpose is not to elicit jurors' opinions concerning particular evidence to be offered at trial. State v. Bibb, 626 So.2d 913, 942 (La.App.1993). Only when the trial court's actions have frustrated the purpose of voir dire will an abuse of discretion be found. Hope, 168 Ill.2d at 30, 212 Ill.Dec. 909, 658 N.E.2d 391. Voir dire cannot be used as an opportunity to even slightly indoctrinate a juror. People v. Cloutier, 156 Ill.2d 483, 496, 190 Ill.Dec. 744, 622 N.E.2d 774 (1993); see also People v. Morgan, 112 Ill.2d 111, 129, 97 Ill.Dec. 430, 492 N.E.2d 1303 (1986).
In the present case, the State, as well as the defendant, presented the venire with many hypotheticals. Defendant argues that the State's hypotheticals exceeded the scope of voir dire and represented an effort to indoctrinate the jurors. The State argues that it was merely "attempting to ascertain whether the jurors could intellectually comprehend" the respective theories of the case. Such an inquiry is acceptable, as long as it does not rise to the level of indoctrination or preeducation. See Gowler v. Ferrell-Ross Co., 206 Ill.App.3d 194, 208, 150 Ill.Dec. 646, 563 N.E.2d 773 (1990).
A careful review of the record establishes that the State's hypotheticals did *364 amount to an attempt to indoctrinate the jury. Therefore, we determine that the State's actions during voir dire, particularly on the subject of identification of the shooter, exceeded the scope of voir dire. However, the State argues that any preeducation of the jurors was harmless error because the State's theory shifted away from the theories mentioned during voir dire. The State posed hypotheticals to the jury about its primary theory of the case, that defendant was the shooter and could be proved to be so by circumstantial evidence. Once trial began, however, the State pursued and argued the theory that defendant was the driver and was guilty of the crime under the doctrine of accountability. As a result, we conclude that, even though we have determined that the State's questions to the jurors exceeded the scope of voir dire, this error must be deemed harmless, "as the record demonstrates that the verdict would not have been otherwise had the comments not have been made." People v. Williams, 147 Ill.2d 173, 232, 167 Ill.Dec. 853, 588 N.E.2d 983 (1991).
The judgment of the circuit court of Winnebago County is affirmed.
Affirmed.
INGLIS and DOYLE, JJ., concur.