THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM GIL *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 83—116, 83—117 cons.

Opinion filed June 29, 1984.

James J. Doherty, Public Defender, of Chicago (R.H.R. Silvertrust, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, of Chicago (Michael E. Shabat, Jane E. Liechty, and Neil J. Linehan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Following a bench trial, defendants, Patricia and William Gil, were found guilty of voluntary manslaughter, armed violence and concealment of the homicidal death of Jose Ramos. Defendants were each sentenced to consecutive terms of 14 years for armed violence and four years for concealment of a homicide.[1] On appeal defendants contend: (1) that their convictions for armed violence cannot be based on voluntary manslaughter; and (2) that the trial judge erred in imposing consecutive sentences for armed violence and concealment of a homicidal death where the trial judge believed that he was required to do so. Additionally, William Gil contends that he cannot be held accountable for his wife's actions in killing Jose Ramos.

On May 25, 1981, the Gil family and their friends were having a barbecue in the back yard of the Gils' residence. Patricia Gil arrived home at approximately 8 p.m. Shortly thereafter she received a phone call from her former common law husband, Jose Ramos. Jose told her that he was coming to her house. She pleaded with him not to, and told him to leave her alone. Witnesses for the State testified that she also told Jose she would kill him if he came to her house. Patricia then came out to the yard and asked her husband for his gun. She stated that Jose was coming over and there might be trouble. After a short argument, William loaded the gun and gave it to her. Patricia then told William to take all the children to her mother's apartment

---

[1]The court found voluntary manslaughter to be a lesser included offense of armed violence and consequently did not impose sentence on the voluntary manslaughter convictions.

in the city. William got the children into the car, drove around the block, parked the car and returned on foot to the house. Daniel Anderson, a 17-year-old who resided with the Gils, and John Frye, Patricia's brother, followed William back to the house. All three hid in the bushes alongside the driveway and waited for Jose's arrival.

Jose arrived shortly thereafter. He walked first to the front door and then to the back of the house. He entered by the back door. Two minutes later a shot was heard. William, Daniel Anderson and John Frye ran to the house. Daniel was the first to reach the back door. Once inside the house Daniel saw Patricia in the dining room with a gun in her hands, and Jose lying on his back on the kitchen floor. Jose was bleeding from the neck area. He instructed Daniel to get help. Daniel reached for the telephone and dialed 911. At this point, William grabbed Daniel, threw him into the dining room, and hung up the telephone. Daniel told William that Jose would die if they did not call for help. William replied, "Let him die." Daniel then grabbed a baseball bat and swung the bat at William. William took the bat from him and, with Patricia's help, calmed him down. Patricia then left with Daniel to find the children.

William and John Frye remained at the house. John asked William what they were going to do. William replied that they were going to wait for Jose to die. John then went into the living room while William went outside to move Jose's car into the driveway. Upon returning, William instructed John to get some old rags and a blanket from the basement. William then took Jose's belt, tied Jose's hands with the belt, removed Jose's valuables from his pockets and wrapped Jose in the blanket. Next, William dragged Jose's body outside and placed it in the trunk of Jose's car. William then returned to the house and, with John's assistance, cleaned the kitchen area. Thereafter the two changed clothes, put the clothes and the dirty rags into a plastic bag, and placed the bag in William's car. They left the house in Jose's car and drove into the city. On the way to the city, William told John to empty the glove compartment. John wrapped the items found in the glove compartment in a coat and threw the coat into a garbage can. Thereafter, William parked and left the car in an alley around Lawrence Avenue in Chicago.

Acting upon information regarding a possible homicide, Officer Bard, Sergeant Kozak and Detective Cauwe proceeded to the Gils' residence. They arrived there at approximately 1 a.m. on the morning of the 26th. The officers found no one home but gained entrance to the house through a partially open kitchen window. They searched the house thoroughly and found no trace of a shooting.

The officers returned to the Gils' residence approximately 20 minutes later and found Daniel Anderson and Patricia home. The officers told Patricia that they were investigating a reported shooting. She replied that someone was playing a joke on the police.

On May 29, 1981, Patricia travelled with Daniel Anderson to West Virginia. In Kentucky, they met with William, who was driving Jose's car. Shortly thereafter, Jose's car broke down. The Gils then had the car towed to Coal City, West Virginia. Once there, the Gils obtained gasoline, which they then poured over Jose's car and ignited.

■ William Gil contends that his conviction of voluntary manslaughter cannot stand because he did not have the specific intent required by the accountability statute (Ill. Rev. Stat. 1981, ch. 38, par. 5—2(c)), or the mental state required by the voluntary manslaughter statute (Ill. Rev. Stat. 1981, ch. 38, par. 9—2). We agree with defendant William that the record does not show that he possessed the mental state required by the voluntary manslaughter statute. However, such a showing is not required when a defendant is convicted of a crime on an accountability basis. Section 5—2 of the Criminal Code of 1961 provides:

> "A person is legally accountable for the conduct of another when:
>
> * * *
>
> (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1981, ch. 38, par. 5—2(c).)

In section 2—4 of the Criminal Code of 1961, conduct is defined as:

> "*** an act or a series of acts, and the accompanying mental state." (Ill. Rev. Stat. 1981, ch. 38, par. 2—4.)

The accountability statute thus ascribes to the defendant both the actions and the mental state of the perpetrator of the offense. Accordingly, the State need not show that the defendant possessed the intent to commit the offense, but only that the defendant possessed the intent to promote or facilitate the commission of the offense.

The intent to promote or facilitate a crime can be shown by evidence that defendant and the principal shared a community of unlawful purpose. (*People v. Reed* (1982), 104 Ill. App. 3d 331, 338, 432 N.E.2d 979; *People v. Bolden* (1978), 59 Ill. App. 3d 441, 448, 375 N.E.2d 898; *People v. Hill* (1977), 53 Ill. App. 3d 280, 284, 368 N.E.2d 714.) A community of unlawful purpose is proved by evidence of prior deliberation to commit the offense or by the spontaneous and

combined participation of a group in the perpetration of the offense. *People v. Reed* (1982), 104 Ill. App. 3d 331, 338; *People v. Bolden* (1978), 59 Ill. App. 3d 441, 448.

■ In the instant case, the record supports the conclusion that William Gil possessed the intent to promote or facilitate the fatal shooting of Jose Ramos. William supplied the gun. He ran to the house when he heard the shot. He physically prevented Daniel Anderson from calling for assistance for the wounded Jose. William told Daniel, "Let him die." William later told John Frye that they were going to wait for Jose to die. Thereafter, William removed Jose's valuables from his pockets, placed his body in the trunk of his car, and cleaned the kitchen area. William also dissuaded Patricia from calling the police when she wanted to report the incident. In our opinion William's participation was sufficient to show an intent to facilitate the commission of the offense and to sustain his conviction of voluntary manslaughter.

■ William next contends that he cannot be held accountable for his wife's actions in killing Jose Ramos. William argues that any actions taken by him occurred after the commission of the offense and should not be considered in determining legal accountability. However, it is well settled in Illinois that a crime is not completed until the offender has escaped from the scene. (*People v. Johnson* (1973), 55 Ill. 2d 62, 68-69, 302 N.E.2d 20; *People v. Mumford* (1979), 70 Ill. App. 3d 395, 400, 387 N.E.2d 910.) On the present record, we find that the trial court properly determined that William aided and abetted Patricia during the commission of the offense. See *People v. Mumford* (1979), 70 Ill. App. 3d 395, 400-01.

■ We next consider William's and Patricia's contention that their armed violence convictions cannot be predicated on voluntary manslaughter. We find our supreme court's decision in *People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48, to be dispositive of this issue. The court there held that the armed violence statute (Ill. Rev. Stat. 1979, ch. 38, par. 33A—1 *et seq.*) is inapplicable to voluntary manslaughter. Consequently, we vacate the armed violence convictions entered against William and Patricia and remand for sentencing on the voluntary manslaughter convictions.

Since we vacate the armed violence convictions entered by the trial court, we do not address Patricia's contention that the trial court abused its discretion in sentencing her to 14 years' imprisonment for armed violence predicated upon voluntary manslaughter.

■ Lastly, we note that the trial judge believed that section 9—3.1, concealment of homicidal death, required the imposition of a sen-

tence to run consecutively to the sentence imposed for manslaughter. (Ill. Rev. Stat. 1981, ch. 38, par. 9—3.1.) On remand for sentencing, we instruct the court that the statute does not require the imposition of consecutive sentences. *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 402 N.E.2d 810, *cert. denied* (1981), 449 U.S. 1127, 67 L. Ed. 2d 115, 101 S. Ct. 948.

For the aforementioned reasons the judgment of the circuit court is affirmed in part, reversed in part and remanded.

Affirmed in part, reversed in part, and remanded.

RIZZI, P.J., and McGILLICUDDY, J., concur.