No. 2--94--1201

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT                              

                                                       

_________________________________________________________________

THE PEOPLE OF THE STATE         )  Appeal from the Circuit

OF ILLINOIS,                    )  Court of Winnebago County.

                                )  

     Plaintiff-Appellee,        )

                                )  No.  94--CF--285

v.                              )

                                )

TORY R. TAYLOR,                 )  Honorable

                                )  Ronald L. Pirrello,

     Defendant-Appellant.       )  Judge, Presiding.        

_________________________________________________________________

     JUSTICE HUTCHINSON delivered the opinion of the court:

     Defendant, Tory Taylor, appeals his conviction of aggravated

discharge of a firearm (720 ILCS 5/24--1.2(a) (West 1994)). 

Defendant asserts that (1) he was not proved guilty of the crime

beyond a reasonable doubt; (2) the trial court erred in refusing to

answer a jury inquiry; and (3) the prosecutor sought to

indoctrinate the potential jurors during voir dire.  We affirm.

     This case arose from a traffic altercation on August 28, 1993,

in Rockford, Illinois.  Defendant, who was 15 years old at the

time, was driving his stepfather's car, a blue Chevrolet Celebrity,

accompanied by his friend, Lynn Hollingshed.  Witnesses testified

that defendant was the driver of the car, and Hollingshed was a

passenger sitting in the front seat.  Defendant testified that he

was wearing shorts and Hollingshed was wearing black overalls, worn

backwards, a black, long-sleeved shirt, and a hat.  Both had been

riding around town for approximately seven hours.  During that

time, Hollingshed showed defendant a .25-caliber handgun that he

had pulled out of his pocket.  At approximately 7:30 p.m.,

defendant turned from a larger street onto a side street.

     Edward Dawson, his wife Alta, and a friend were traveling on

a two-lane, two-way street on their way to a wedding reception. 

Vehicles were parked on both sides of the street, reducing the lane

size.  Defendant turned onto this street as Edward was approaching

the intersection.  Beyond these facts, the accounts of the incident

vary.  Edward and Alta testified that defendant's car came quickly

around the corner, occupied a part of both lanes, and forced their

vehicle close to a parked car.  Defendant testified that the street

was too narrow for both cars to pass, so he stopped his car and

backed it up to allow the other vehicle to pass.  

     Edward and Alta both exited their car, allegedly to look for

damage done to the parked car.  They testified that the passenger

in the Celebrity also got out of the Celebrity.  Edward asked

whether the young man had a "problem."  Defendant testified that

Edward had said, "You got a problem you fuckin' niggers?" as Edward

drove past.  Both Edward and Alta testified that the passenger was

wearing black overalls, turned backwards, a black shirt, and a hat. 

They also testified that the passenger had a small, black machine

gun in his left hand.  Edward identified the passenger as the

defendant during a photographic lineup and at trial.  When asked if

he had a problem, the youth responded, "Yes, I got a fuckin'

problem, white boy."  To emphasize his point, the passenger removed

a small handgun and fired it in Edward's direction.  Defendant

testified that the shot was fired upward, and Edward testified that

the bullet "whizzed" past his ear.  Edward testified that he jumped

back into his car as another bullet was fired.  Alta, who had also

exited the car, reentered the car and wrote down the license plate

number of defendant's vehicle.  The shooter then reentered the

Celebrity and the car left the scene.  The Dawsons went to the

closest service station and called the police.

     Defendant testified that Hollingshed was the shooter. 

Hollingshed was angered by Edward's alleged racial slur and had

told defendant to stop the car.  Hollingshed did not indicate why

he wanted defendant to stop the car, nor did he give any reason for

exiting the car.  Defendant testified that he was startled when the

first shot rang out.  After firing two shots in the air,

Hollingshed came back to defendant's car.  Defendant asked

Hollingshed why he fired the shots, but received no response from

him.  Defendant then drove quickly from the scene.  

     Defendant drove to his brother's house, but he was not home. 

He then drove to where his stepfather works, but the stepfather was

still working and unable to meet with defendant.  Finally,

defendant went to the house of his uncle, Desmond Taylor.  Taylor

drove defendant and Hollingshed towards a friend's house, but

defendant and Hollingshed left the car when they saw a police car

making a U-turn to follow their car.  The officer had apparently

identified the vehicle as the car involved in the shooting from the

Dawsons' description of the car and its license plate number.  The

officer stopped Taylor and obtained defendant's and Hollingshed's

name.  

     Defendant and Hollingshed ran for a couple of blocks until

they found a friend of defendant's mother, who drove them to the

house of defendant's friend.  Hollingshed left the friend's house

after a short period to go to the hospital for treatment of a cut

he had received during their flight from Taylor's vehicle. 

Defendant remained at the friend's house until late in the evening.

     Defendant was arrested, and a grand jury later indicted him

for aggravated discharge of a firearm.  Defendant submitted a

motion to suppress his identification as the shooter, because he

was the only person wearing a black, long-sleeved shirt in the

photo array presented to Edward and Alta.  The motion was denied. 

However, because the State changed the direction of the

prosecution, arguing that defendant was the driver and not the

shooter, the denial of this motion was not raised on appeal.

     During voir dire, defendant and the State used hypotheticals

to determine potential jurors' ability to understand the nature of

the case.  Defense counsel made repeated objections to the State's

hypotheticals, arguing that the State was attempting to

indoctrinate the jury.  After both sides had presented their case

at trial, during jury deliberations the jury sent a question to the

trial court.  The jury asked for a definition of the term "offense"

as it related to "aiding and abetting."  The trial court answered,

"You have your instructions as they apply to the facts, and you

must apply your recollection of the facts to those instructions." 

After another four-hour period of deliberation, the jury found

defendant guilty.   

     Defendant first argues that he was not proved guilty beyond a

reasonable doubt of aggravated discharge of a firearm under the

theory of accountability.  In assessing whether the evidence

against a defendant was sufficient to prove guilt beyond a

reasonable doubt, a reviewing court must determine " ' "whether,

after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." ' " 

(Emphasis omitted.)  People v. Furby, 138 Ill. 2d 434, 455 (1990),

quoting People v. Collins, 106 Ill. 2d 237, 261 (1985), quoting

Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99

S. Ct. 2781, 2789 (1979).  A defendant's conviction should not be

set aside on grounds of insufficient evidence unless the proof is

so improbable or unsatisfactory that a reasonable doubt exists

about the defendant's guilt.  Furby, 138 Ill. 2d at 455.  Our

statute on accountability states that a defendant is legally

accountable for the actions of another when:

          "(c) Either before or during the commission of an

     offense, and with the intent to promote or facilitate such

     commission, [she or] he solicits, aids, abets, agrees or

     attempts to aid, such other person in the planning or

     commission of the offense."  720 ILCS 5/5--2(c) (West 1994).

Defendant argues that the offense was completed when Hollingshed

fired the handgun at Dawson, and he was, therefore, not involved in

the offense either before or during its commission.  

     A person may not be held accountable for a crime merely for

being present (People v. Melgoza, 231 Ill. App. 3d 510, 537

(1992)), nor will a person generally be rendered accountable for

acquiescing to the criminal activities of another (People v.

Miscichowski, 143 Ill. App. 3d 646, 655 (1986)). 

     "In order to establish' guilt based upon a theory of legal

     accountability, the State must prove beyond a reasonable doubt

     that either before or during the commission of the offense,

     the defendant solicited, aided, abetted, agreed[,] or

     attempted to aid another person in the commission of the

     offense and that such participation was with the concurrent,

     specific intent to promote or facilitate the commission of the

     offense."  People v. Novy, 232 Ill. App. 3d 631, 664 (1992).

The question then is whether defendant helped to facilitate the

commission of the offense by providing Hollingshed with an escape

from the scene of the offense.

     Defendant directs this court's attention to our recent

opinion, In re D.C., 259 Ill. App. 3d 637 (1994).  In D.C., a minor

was convicted of burglary under the theory of accountability.  The

defendant was present with some friends when they burglarized a

vehicle, and the defendant was convicted of a burglary that

occurred before he joined them.  This court overturned his

conviction, finding that, "[i]f the crime itself does not include

escape as an element, it follows that the escape should not be

considered part of the crime for determining whether the accused

committed the crime."  In re D.C., 259 Ill. App. 3d at 643.  

     We do not find this rationale persuasive.  We believe the

reasoning in the dissenting opinion in D.C. to be sound.  As

Presiding Justice Inglis correctly noted in that dissent, the

majority opinion is contrary to an established line of cases

holding that escape is to be considered an element of the offense

for accountability purposes.  See, e.g., People v. House, 232 Ill.

App. 3d 309 (1992); People v. Johnson, 220 Ill. App. 3d 550 (1991);

People v. Gil, 125 Ill. App. 3d 892 (1984); People v. Mumford, 70

Ill. App. 3d 395 (1979).  In D.C., the minor was aware that his

friends had committed a crime, and he made a conscious decision to

remain with them during the commission of another crime and to

provide them with a way to escape the scene.  As a result, we

believe that the minor was correctly found to be accountable for

the crime by the trial court.  Therefore, we adopt the standard

from House and overrule any portion of In re D.C. that is contrary

to this standard.

     Defendant also cites People v. Dennis, 271 Ill. App. 3d 1041

(1995), for the proposition that escape is not necessarily a

component of an offense for accountability purposes.  In Dennis,

the defendant drove a friend away from the scene of a crime, but he

only became aware that the crime had been committed after the

escape.  The court reasoned that "[f]light from the scene does not

elongate the offense of robbery."  Dennis, 271 Ill. App. 3d at

1046.  The Dennis case is, however, factually distinguishable from

the present case.  In the present case, defendant was acutely aware

of the crime during its commission and made the conscious decision

to aid Hollingshed's flight from the scene. 

     We find the well-established precedents of this court to be

persuasive.  "[A] criminal act is not completed until the offender

has escaped from the scene."  Mumford, 70 Ill. App. 3d at 400. 

This holding was echoed by the court in Gil, which similarly held

that "a crime is not completed until the offender has escaped from

the scene."  Gil, 125 Ill. App. 3d at 896.  In the present case,

the actual act of aggravated discharge of a firearm may have been

completed when the firearm was discharged, but the crime was not

completed for the purposes of accountability.  Defendant may not

have fired the handgun, but he did knowingly provide Hollingshed

with a very effective way to escape.  After viewing the evidence in

the light most favorable to the prosecution, we find that any

rational trier of fact could have found the essential elements of

the crime of aggravated discharge of a firearm beyond a reasonable

doubt.

     Defendant's second issue on appeal is that the trial court

erred in refusing to clarify the law of accountability to the jury. 

Jurors are entitled to have their questions answered, and "the

trial court has a duty to provide instruction to the jury where it

has posed an explicit question or requested clarification on a

point of law arising from facts about which there is doubt or

confusion."  People v. Childs, 159 Ill. 2d 217, 228-29 (1994),

citing People v. Reid, 136 Ill. 2d 27, 39 (1990); see also People

v. Landwer, 279 Ill. App. 3d 306, 314 (1996).  Under certain

circumstances, a trial court's refusal to answer the jury's

question may be held to be prejudicial error.  See, e.g., People v.

Shannon, 206 Ill. App. 3d 310 (1990).  The rule, as explained by

the Childs court, is:

          "A trial court may exercise its discretion and properly

     decline to answer a jury's inquiries where the instructions

     are readily understandable and sufficiently explain the

     relevant law, where further instructions would serve no useful

     purpose or would potentially mislead the jury, when the jury's

     inquiry involves a question of fact, or if the giving of an

     answer would cause the court to express an opinion which would

     likely direct a verdict one way or another."  Childs, 159 Ill.

     2d at 228.

For this inquiry, whether the jury was properly instructed before

the beginning of deliberations is irrelevant.  People v. Kittinger,

261 Ill. App. 3d 1033, 1038-39 (1994).

     In the present case, the trial court refused to provide the

jury with a definition of the term "offense" as it related to

aiding and abetting.  The trial court responded to the jury's

inquiry by sending the jury a note stating, "You have your

instructions as they apply to the facts and you must apply your

recollection of the facts to those cases."  Defendant argues that

the trial court erred because its answer merely created more

confusion over the definition of a term contained in the jury

instructions.  The State asserts that the jury's inquiry was

"demonstrably ambiguous" and could not have been answered without

a colloquy between the court and the jury.  We agree with the

State.

     The trial court could have provided the jury with a definition

of the term "offense" as it is contained in our statute by

responding that an " '[o]ffense' means a violation of any penal

statute of this State" (720 ILCS 5/2--12 (West 1994)).  However,

this would not necessarily have provided the jury with any

guidance.  In fact, the jury appeared to be looking for a

definition that might require the trial court to comment on a

question of fact, to express an opinion which would likely direct

a verdict one way or another or, at the very least,  to ask the

jury additional questions to clarify the request.   Therefore, we

determine that the trial court properly refused to answer the

jury's inquiry.

     Defendant's final argument is that the State improperly sought

to indoctrinate the jurors during voir dire through the use of

hypotheticals.  The trial court has primary responsibility for

conducting voir dire examination in criminal cases, and the scope,

extent, and manner of questioning rest within the discretion of the

trial court.  134 Ill. 2d Rs. 234, 431; see also People v. Hope,

168 Ill. 2d 1, 30 (1995); People v. Szudy, 262 Ill. App. 3d 695,

708 (1994).  The purpose of voir dire is to ascertain sufficient

information about prospective jurors' beliefs and opinions to

permit the removal of those members of the venire who are unable or

unwilling to be impartial.  People v. Oliver, 265 Ill. App. 3d 543,

548 (1994).  The purpose is not to elicit jurors' opinions

concerning particular evidence to be offered at trial.  State v.

Bibb, 626 So. 2d 913, 942 (La. App. 1993).  Only when the trial

court's actions have frustrated the purpose of voir dire will an

abuse of discretion be found.  Hope, 168 Ill. 2d at 30.  Voir dire

cannot be used as an opportunity to even slightly indoctrinate a

juror.  People v. Cloutier, 156 Ill. 2d 483, 496 (1993); see also

People v. Morgan, 112 Ill. 2d 111, 129 (1986). 

     In the present case, the State, as well as the defendant,

presented the venire with many hypotheticals.  Defendant argues

that the State's hypotheticals exceeded the scope of voir dire and

represented an effort to indoctrinate the jurors.  The State argues

that it was merely "attempting to ascertain whether the jurors

could intellectually comprehend" the respective theories of the

case.  Such an inquiry is acceptable, as long as it does not rise

to the level of indoctrination or preeducation.  See Gowler v.

Ferrell-Ross Co., 206 Ill. App. 3d 194, 208 (1990). 

      A careful review of the record establishes that the State's

hypotheticals did amount to an attempt to indoctrinate the jury. 

Therefore, we determine that the State's actions during voir dire,

particularly on the subject of identification of the shooter,

exceeded the scope of voir dire.  However, the State argues that

any preeducation of the jurors was harmless error because the

State's theory shifted away from the theories mentioned during voir

dire.  The State posed hypotheticals to the jury about its primary

theory of the case, that defendant was the shooter and could be

proved to be so by circumstantial evidence.  Once trial began,

however, the State pursued and argued the theory that defendant was

the driver and was guilty of the crime under the doctrine of

accountability.   As a result, we conclude that, even though we

have determined that the State's questions to the jurors exceeded

the scope of voir dire, this error must be deemed harmless, "as the

record demonstrates that the verdict would not have been otherwise

had the comments not have been made."  People v. Williams, 147 Ill.

2d 173, 232 (1991).

     The judgment of the circuit court of Winnebago County is

affirmed.

     Affirmed.

     INGLIS and DOYLE, JJ., concur.